# WISCONSIN *v.* MITCHELL

No. 92-515.   Argued April 21, 1993—Decided June 11, 1993

*James E. Doyle,* Attorney General of Wisconsin, argued the cause for petitioner. With him on the briefs was *Paul Lundsten,* Assistant Attorney General.

*Michael R. Dreeben* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Acting Solicitor General Bryson, Acting Assistant Attorneys General Keeney* and *Turner, Kathleen A. Felton,* and *Thomas E. Chandler.*

*Lynn S. Adelman* argued the cause for respondent. With him on the brief were *Kenneth P. Casey* and *Susan Gellman.**

---

*Briefs of *amici curiae* urging reversal were filed for the State of Ohio et al. by *Lee Fisher*, Attorney General of Ohio, *Andrew S. Bergman*, Assistant Attorney General, and *Simon B. Karas, John Payton*, Corporation Counsel of the District of Columbia, and by the Attorneys General for their respective States as follows: *James H. Evans* of Alabama, *Charles E. Cole* of Alaska, *Grant Woods* of Arizona, *Winston Bryant* of Arkansas, *Daniel E. Lungren* of California, *Gale A. Norton* of Colorado, *Richard Blumenthal* of Connecticut, *Charles M. Oberly III* of Delaware, *Robert A. Butterworth* of Florida, *Michael J. Bowers* of Georgia, *Robert A. Marks* of Hawaii, *Larry EchoHawk* of Idaho, *Roland W. Burris* of Illinois, *Pamela Carter* of Indiana, *Bonnie J. Campbell* of Iowa, *Robert T. Stephan* of Kansas, *Chris Gorman* of Kentucky, *Richard P. Ieyoub* of Louisiana, *Michael E. Carpenter* of Maine, *J. Joseph Curran, Jr.*, of Maryland, *Scott Harshbarger* of Massachusetts, *Frank J. Kelley* of Michigan, *Hubert H. Humphrey III* of Minnesota, *Mike Moore* of Mississippi, *Jeremiah W. Nixon* of Missouri, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *Jeffrey R. Howard* of New Hampshire, *Robert J. Del Tufo* of New Jersey, *Tom Udall* of New Mexico, *Robert Abrams* of New York, *Michael F. Easley* of North Carolina, *Heidi Heitkamp* of North Dakota, *Susan B. Loving* of Oklahoma, *Theodore R. Kulongoski* of Oregon, *Ernest D. Preate, Jr.*, of Pennsylvania, *Jeffrey B. Pine* of Rhode Island, *T. Travis Medlock* of South Carolina, *Mark Barnett* of South Dakota, *Charles W. Burson* of Tennessee, *Dan Morales* of Texas, *Jan Graham* of Utah, *Jeffrey L. Amestoy* of Vermont, *Mary Sue Terry* of Virginia, *Christine O. Gregoire* of Washington, *Daryl V. McGraw* of West Virginia, and *Joseph B. Myer* of Wyoming; for the city of Atlanta et al. by *O. Peter Sherwood, Leonard J. Koerner, Lawrence S. Kahn, Linda H. Young, Burt Neuborne, Norman Dorsen, Neal M. Janey, Albert W. Wallis, Lawrence Rosenthal, Benna Ruth Solomon, Julie P. Downey, Jessica R. Heinz, Judith E. Harris, Louise H. Renne*, and *Dennis Aftergut;* for the American Civil Liberties Union by *Steven R. Shapiro* and *John A. Powell;* for the Anti-Defamation League et al. by *David M. Raim, Jeffrey P. Sinensky, Steven M. Freeman, Michael Lieberman*, and *Robert H. Friebert;* for the Appellate Committee of the California District Attorneys Association by *Gil Garcetti* and *Harry B. Sondheim;* for the California Association of Human Rights Organizations et al. by *Henry J. Silberberg* and *Mark Solomon;* for the Chicago Lawyers' Committee for Civil Rights

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Respondent Todd Mitchell's sentence for aggravated battery was enhanced because he intentionally selected his victim on account of the victim's race. The question presented in this case is whether this penalty enhancement is prohibited by the First and Fourteenth Amendments. We hold that it is not.

On the evening of October 7, 1989, a group of young black men and boys, including Mitchell, gathered at an apartment

Under Law, Inc., by *Frederick J. Sperling* and *Roslyn C. Lieb;* for the Criminal Justice Legal Foundation by *Kent S. Scheidegger;* for the Crown Heights Coalition et al. by *Samuel Rabinove, Richard T. Foltin, Kenneth S. Stern, Elaine R. Jones,* and *Eric Schnapper;* for the Jewish Advocacy Center by *Barrett W. Freedlander;* for the Lawyers' Committee for Civil Rights of the San Francisco Bay Area by *Robert E. Borton;* for the National Asian Pacific American Legal Consortium et al. by *Angelo N. Ancheta;* for the National Conference of State Legislatures et al. by *Richard Ruda* and *Michael J. Wahoske;* and for Congressman Charles E. Schumer et al. by *Steven T. Catlett* and *Richard A. Cordray.*

Briefs of *amici curiae* urging affirmance were filed for the American Civil Liberties Union of Ohio by *Daniel T. Kobil* and *Benson A. Wolman;* for California Attorneys for Criminal Justice by *Robert R. Riggs, John T. Philipsborn,* and *Dennis P. Riordan;* for the Center for Individual Rights by *Gary B. Born* and *Michael P. McDonald;* for the National Association of Criminal Defense Lawyers et al. by *Harry R. Reinhart, John Pyle, Sean O'Brien,* and *William I. Aronwald;* for the Ohio Public Defender by *James Kura, Robert L. Lane, James R. Neuhard, Allison Connelly, Theodore A. Gottfried, Henry Martin,* and *James E. Duggan;* for the Wisconsin Freedom of Information Council by *Jeffrey J. Kassel;* for the Reason Foundation by *Robert E. Sutton;* for the Wisconsin Association of Criminal Defense Lawyers by *Ira Mickenberg;* and for Larry Alexander et al. by *Martin H. Redish.*

Briefs of *amici curiae* were filed for the Lawyers' Committee for Civil Rights Under Law by *Paul Brest, Alan Cope Johnston, Herbert M. Wachtell, William H. Brown III,* and *Norman Redlich;* and for the Wisconsin Inter-Racial and Inter-Faith Coalition for Freedom of Thought by *Joan Kessler.*

complex in Kenosha, Wisconsin. Several members of the group discussed a scene from the motion picture "Mississippi Burning," in which a white man beat a young black boy who was praying. The group moved outside and Mitchell asked them: "'Do you all feel hyped up to move on some white people?'" Brief for Petitioner 4. Shortly thereafter, a young white boy approached the group on the opposite side of the street where they were standing. As the boy walked by, Mitchell said: "'You all want to fuck somebody up? There goes a white boy; go get him.'" *Id.*, at 4–5. Mitchell counted to three and pointed in the boy's direction. The group ran toward the boy, beat him severely, and stole his tennis shoes. The boy was rendered unconscious and remained in a coma for four days.

After a jury trial in the Circuit Court for Kenosha County, Mitchell was convicted of aggravated battery. Wis. Stat. §§ 939.05 and 940.19(1m) (1989–1990). That offense ordinarily carries a maximum sentence of two years' imprisonment. §§ 940.19(1m) and 939.50(3)(e). But because the jury found that Mitchell had intentionally selected his victim because of the boy's race, the maximum sentence for Mitchell's offense was increased to seven years under § 939.645. That provision enhances the maximum penalty for an offense whenever the defendant "[i]ntentionally selects the person against whom the crime . . . is committed . . . because of the race, religion, color, disability, sexual orientation, national origin or ancestry of that person . . . ." § 939.645(1)(b).[1]

---

[1] At the time of Mitchell's trial, the Wisconsin penalty-enhancement statute provided:

"(1) If a person does all of the following, the penalties for the underlying crime are increased as provided in sub. (2):

"(a) Commits a crime under chs. 939 to 948.

"(b) Intentionally selects the person against whom the crime under par. (a) is committed or selects the property which is damaged or otherwise affected by the crime under par. (a) because of the race, religion, color,

The Circuit Court sentenced Mitchell to four years' imprisonment for the aggravated battery.

Mitchell unsuccessfully sought postconviction relief in the Circuit Court. Then he appealed his conviction and sentence, challenging the constitutionality of Wisconsin's penalty-enhancement provision on First Amendment grounds.[2] The Wisconsin Court of Appeals rejected Mitchell's challenge, 163 Wis. 2d 652, 473 N. W. 2d 1 (1991), but the Wisconsin Supreme Court reversed. The Supreme Court

disability, sexual orientation, national origin or ancestry of that person or the owner or occupant of that property.

"(2)(a) If the crime committed under sub. (1) is ordinarily a misdemeanor other than a Class A misdemeanor, the revised maximum fine is $10,000 and the revised maximum period of imprisonment is one year in the county jail.

"(b) If the crime committed under sub. (1) is ordinarily a Class A misdemeanor, the penalty increase under this section changes the status of the crime to a felony and the revised maximum fine is $10,000 and the revised maximum period of imprisonment is 2 years.

"(c) If the crime committed under sub. (1) is a felony, the maximum fine prescribed by law for the crime may be increased by not more than $5,000 and the maximum period of imprisonment prescribed by law for the crime may be increased by not more than 5 years.

"(3) This section provides for the enhancement of the penalties applicable for the underlying crime. The court shall direct that the trier of fact find a special verdict as to all of the issues specified in sub. (1).

"(4) This section does not apply to any crime if proof of race, religion, color, disability, sexual orientation, national origin or ancestry is required for a conviction for that crime." Wis. Stat. § 939.645 (1989–1990). The statute was amended in 1992, but the amendments are not at issue in this case.

[2] Mitchell also challenged the statute on Fourteenth Amendment equal protection and vagueness grounds. The Wisconsin Court of Appeals held that Mitchell waived his equal protection claim and rejected his vagueness challenge outright. 163 Wis. 2d 652, 473 N. W. 2d 1 (1991). The Wisconsin Supreme Court declined to address both claims. 169 Wis. 2d 153, 158, n. 2, 485 N. W. 2d 807, 809, n. 2 (1992). Mitchell renews his Fourteenth Amendment claims in this Court. But since they were not developed below and plainly fall outside of the question on which we granted certiorari, we do not reach them either.

held that the statute "violates the First Amendment directly by punishing what the legislature has deemed to be offensive thought." 169 Wis. 2d 153, 163, 485 N. W. 2d 807, 811 (1992). It rejected the State's contention "that the statute punishes only the 'conduct' of intentional selection of a victim." *Id.*, at 164, 485 N. W. 2d, at 812. According to the court, "[t]he statute punishes the 'because of' aspect of the defendant's selection, the *reason* the defendant selected the victim, the *motive* behind the selection." *Ibid.* (emphasis in original). And under *R. A. V.* v. *St. Paul*, 505 U. S. 377 (1992), "the Wisconsin legislature cannot criminalize bigoted thought with which it disagrees." 169 Wis. 2d, at 171, 485 N. W. 2d, at 815.

The Supreme Court also held that the penalty-enhancement statute was unconstitutionally overbroad. It reasoned that, in order to prove that a defendant intentionally selected his victim because of the victim's protected status, the State would often have to introduce evidence of the defendant's prior speech, such as racial epithets he may have uttered before the commission of the offense. This evidentiary use of protected speech, the court thought, would have a "chilling effect" on those who feared the possibility of prosecution for offenses subject to penalty enhancement. See *id.*, at 174, 485 N. W. 2d, at 816. Finally, the court distinguished antidiscrimination laws, which have long been held constitutional, on the ground that the Wisconsin statute punishes the "subjective mental process" of selecting a victim because of his protected status, whereas antidiscrimination laws prohibit "objective acts of discrimination." *Id.*, at 176, 485 N. W. 2d, at 817.[3]

We granted certiorari because of the importance of the question presented and the existence of a conflict of author-

--------

[3] Two justices dissented. They concluded that the statute punished discriminatory acts, and not beliefs, and therefore would have upheld it. See 169 Wis. 2d, at 181, 485 N. W. 2d, at 819 (Abrahamson, J.); *id.*, at 187–195, 485 N. W. 2d, at 821–825 (Bablitch, J.).

ity among state high courts on the constitutionality of statutes similar to Wisconsin's penalty-enhancement provision,[4] 506 U. S. 1033 (1992). We reverse.

Mitchell argues that we are bound by the Wisconsin Supreme Court's conclusion that the statute punishes bigoted thought and not conduct. There is no doubt that we are bound by a state court's construction of a state statute. *R. A. V., supra,* at 381; *New York* v. *Ferber,* 458 U. S. 747, 769, n. 24 (1982); *Terminiello* v. *Chicago,* 337 U. S. 1, 4 (1949). In *Terminiello,* for example, the Illinois courts had defined the term " 'breach of the peace,' " in a city ordinance prohibiting disorderly conduct, to include " 'stirs the public to anger . . . or creates a disturbance.' " *Id.,* at 4. We held this con-

---

[4] Several States have enacted penalty-enhancement provisions similar to the Wisconsin statute at issue in this case. See, *e. g.,* Cal. Penal Code Ann. §422.7 (West 1988 and Supp. 1993); Fla. Stat. §775.085 (1991); Mont. Code Ann. §45-5-222 (1992); Vt. Stat. Ann., Tit. 13, §1455 (Supp. 1992). Proposed federal legislation to the same effect passed the House of Representatives in 1992, H. R. 4797, 102d Cong., 2d Sess. (1992), but failed to pass the Senate, S. 2522, 102d Cong., 2d Sess. (1992). The state high courts are divided over the constitutionality of penalty-enhancement statutes and analogous statutes covering bias-motivated offenses. Compare, *e. g., State* v. *Plowman,* 314 Ore. 157, 838 P. 2d 558 (1992) (upholding Oregon statute), with *State* v. *Wyant,* 64 Ohio St. 3d 566, 597 N. E. 2d 450 (1992) (striking down Ohio statute); 169 Wis. 2d 153, 485 N. W. 2d 807 (1992) (case below) (striking down Wisconsin statute). According to *amici,* bias-motivated violence is on the rise throughout the United States. See, *e. g.,* Brief for the National Asian Pacific American Legal Consortium et al. as *Amici Curiae* 5–11; Brief for the Anti-Defamation League et al. as *Amici Curiae* 4–7; Brief for the City of Atlanta et al. as *Amici Curiae* 3–12. In 1990, Congress enacted the Hate Crimes Statistics Act, Pub. L. 101–275, §1(b)(1), 104 Stat. 140, codified at 28 U. S. C. §534 (note) (1988 ed., Supp. III), directing the Attorney General to compile data "about crimes that manifest evidence of prejudice based on race, religion, sexual orientation, or ethnicity." Pursuant to the Act, the Federal Bureau of Investigation reported in January 1993, that 4,558 bias-motivated offenses were committed in 1991, including 1,614 incidents of intimidation, 1,301 incidents of vandalism, 796 simple assaults, 773 aggravated assaults, and 12 murders. See Brief for the Crown Heights Coalition et al. as *Amici Curiae* 1A–7A.

struction to be binding on us. But here the Wisconsin Supreme Court did not, strictly speaking, construe the Wisconsin statute in the sense of defining the meaning of a particular statutory word or phrase. Rather, it merely characterized the "practical effect" of the statute for First Amendment purposes. See 169 Wis. 2d, at 166–167, 485 N. W. 2d, at 813 ("Merely because the statute refers in a literal sense to the intentional 'conduct' of selecting, does not mean the court must turn a blind eye to the intent and practical effect of the law—punishment of motive or thought"). This assessment does not bind us. Once any ambiguities as to the meaning of the statute are resolved, we may form our own judgment as to its operative effect.

The State argues that the statute does not punish bigoted thought, as the Supreme Court of Wisconsin said, but instead punishes only conduct. While this argument is literally correct, it does not dispose of Mitchell's First Amendment challenge. To be sure, our cases reject the "view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States* v. *O'Brien,* 391 U. S. 367, 376 (1968); accord, *R. A. V., supra,* at 385–386; *Spence* v. *Washington,* 418 U. S. 405, 409 (1974) *(per curiam); Cox* v. *Louisiana,* 379 U. S. 536, 555 (1965). Thus, a physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment. See *Roberts* v. *United States Jaycees,* 468 U. S. 609, 628 (1984) ("[V]iolence or other types of potentially expressive activities that produce special harms distinct from their communicative impact . . . are entitled to no constitutional protection"); *NAACP* v. *Claiborne Hardware Co.,* 458 U. S. 886, 916 (1982) ("The First Amendment does not protect violence").

But the fact remains that under the Wisconsin statute the same criminal conduct may be more heavily punished if the victim is selected because of his race or other protected sta-

tus than if no such motive obtained. Thus, although the statute punishes criminal conduct, it enhances the maximum penalty for conduct motivated by a discriminatory point of view more severely than the same conduct engaged in for some other reason or for no reason at all. Because the only reason for the enhancement is the defendant's discriminatory motive for selecting his victim, Mitchell argues (and the Wisconsin Supreme Court held) that the statute violates the First Amendment by punishing offenders' bigoted beliefs.

Traditionally, sentencing judges have considered a wide variety of factors in addition to evidence bearing on guilt in determining what sentence to impose on a convicted defendant. See *Payne* v. *Tennessee,* 501 U. S. 808, 820–821 (1991); *United States* v. *Tucker,* 404 U. S. 443, 446 (1972); *Williams* v. *New York,* 337 U. S. 241, 246 (1949). The defendant's motive for committing the offense is one important factor. See 1 W. LeFave & A. Scott, Substantive Criminal Law § 3.6(b), p. 324 (1986) ("Motives are most relevant when the trial judge sets the defendant's sentence, and it is not uncommon for a defendant to receive a minimum sentence because he was acting with good motives, or a rather high sentence because of his bad motives"); cf. *Tison* v. *Arizona,* 481 U. S. 137, 156 (1987) ("Deeply ingrained in our legal tradition is the idea that the more purposeful is the criminal conduct, the more serious is the offense, and, therefore, the more severely it ought to be punished"). Thus, in many States the commission of a murder, or other capital offense, for pecuniary gain is a separate aggravating circumstance under the capital sentencing statute. See, *e. g.,* Ariz. Rev. Stat. Ann. § 13–703(F)(5) (1989); Fla. Stat. § 921.1415(f) (Supp. 1992); Miss. Code Ann. § 99–19–101(5)(f) (Supp. 1992); N. C. Gen. Stat. § 15A–2000(e)(6) (1992); Wyo. Stat. § 6–2–102(h)(vi) (Supp. 1992).

But it is equally true that a defendant's abstract beliefs, however obnoxious to most people, may not be taken into consideration by a sentencing judge. *Dawson* v. *Delaware,*

503 U. S. 159 (1992). In *Dawson*, the State introduced evidence at a capital sentencing hearing that the defendant was a member of a white supremacist prison gang. Because "the evidence proved nothing more than [the defendant's] abstract beliefs," we held that its admission violated the defendant's First Amendment rights. *Id.*, at 167. In so holding, however, we emphasized that "the Constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." *Id.*, at 165. Thus, in *Barclay* v. *Florida*, 463 U. S. 939 (1983) (plurality opinion), we allowed the sentencing judge to take into account the defendant's racial animus towards his victim. The evidence in that case showed that the defendant's membership in the Black Liberation Army and desire to provoke a "race war" were related to the murder of a white man for which he was convicted. See *id.*, at 942–944. Because "the elements of racial hatred in [the] murder" were relevant to several aggravating factors, we held that the trial judge permissibly took this evidence into account in sentencing the defendant to death. *Id.*, at 949, and n. 7.

Mitchell suggests that *Dawson* and *Barclay* are inapposite because they did not involve application of a penalty-enhancement provision. But in *Barclay* we held that it was permissible for the sentencing court to consider the defendant's racial animus in determining whether he should be sentenced to death, surely the most severe "enhancement" of all. And the fact that the Wisconsin Legislature has decided, as a general matter, that bias-motivated offenses warrant greater maximum penalties across the board does not alter the result here. For the primary responsibility for fixing criminal penalties lies with the legislature. *Rummel* v. *Estelle*, 445 U. S. 263, 274 (1980); *Gore* v. *United States*, 357 U. S. 386, 393 (1958).

Mitchell argues that the Wisconsin penalty-enhancement statute is invalid because it punishes the defendant's discriminatory motive, or reason, for acting. But motive plays the same role under the Wisconsin statute as it does under federal and state antidiscrimination laws, which we have previously upheld against constitutional challenge. See *Roberts* v. *United States Jaycees*, 468 U. S., at 628; *Hishon* v. *King & Spalding*, 467 U. S. 69, 78 (1984); *Runyon* v. *McCrary*, 427 U. S. 160, 176 (1976). Title VII of the Civil Rights Act of 1964, for example, makes it unlawful for an employer to discriminate against an employee *"because of* such individual's race, color, religion, sex, or national origin." 42 U. S. C. § 2000e–2(a)(1) (emphasis added). In *Hishon*, we rejected the argument that Title VII infringed employers' First Amendment rights. And more recently, in *R. A. V.* v. *St. Paul*, 505 U. S., at 389–390, we cited Title VII (as well as 18 U. S. C. § 242 and 42 U. S. C. §§ 1981 and 1982) as an example of a permissible content-neutral regulation of conduct.

Nothing in our decision last Term in *R. A. V.* compels a different result here. That case involved a First Amendment challenge to a municipal ordinance prohibiting the use of " 'fighting words' that insult, or provoke violence, 'on the basis of race, color, creed, religion or gender.' " 505 U. S., at 391 (quoting St. Paul Bias-Motivated Crime Ordinance, St. Paul, Minn., Legis. Code § 292.02 (1990)). Because the ordinance only proscribed a class of "fighting words" deemed particularly offensive by the city—*i. e.,* those "that contain . . . messages of 'bias-motivated' hatred," 505 U. S., at 392— we held that it violated the rule against content-based discrimination. See *id.*, at 392–394. But whereas the ordinance struck down in *R. A. V.* was explicitly directed at expression (*i. e.,* "speech" or "messages"), *id.*, at 392, the statute in this case is aimed at conduct unprotected by the First Amendment.

Moreover, the Wisconsin statute singles out for enhancement bias-inspired conduct because this conduct is thought

to inflict greater individual and societal harm. For example, according to the State and its *amici*, bias-motivated crimes are more likely to provoke retaliatory crimes, inflict distinct emotional harms on their victims, and incite community unrest. See, *e. g.*, Brief for Petitioner 24–27; Brief for United States as *Amicus Curiae* 13–15; Brief for Lawyers' Committee for Civil Rights Under Law as *Amicus Curiae* 18–22; Brief for the American Civil Liberties Union as *Amicus Curiae* 17–19; Brief for the Anti-Defamation League et al. as *Amici Curiae* 9–10; Brief for Congressman Charles E. Schumer et al. as *Amici Curiae* 8–9. The State's desire to redress these perceived harms provides an adequate explanation for its penalty-enhancement provision over and above mere disagreement with offenders' beliefs or biases. As Blackstone said long ago, "it is but reasonable that among crimes of different natures those should be most severely punished, which are the most destructive of the public safety and happiness." 4 W. Blackstone, Commentaries *16.

Finally, there remains to be considered Mitchell's argument that the Wisconsin statute is unconstitutionally overbroad because of its "chilling effect" on free speech. Mitchell argues (and the Wisconsin Supreme Court agreed) that the statute is "overbroad" because evidence of the defendant's prior speech or associations may be used to prove that the defendant intentionally selected his victim on account of the victim's protected status. Consequently, the argument goes, the statute impermissibly chills free expression with respect to such matters by those concerned about the possibility of enhanced sentences if they should in the future commit a criminal offense covered by the statute. We find no merit in this contention.

The sort of chill envisioned here is far more attenuated and unlikely than that contemplated in traditional "overbreadth" cases. We must conjure up a vision of a Wisconsin citizen suppressing his unpopular bigoted opinions for fear that if he later commits an offense covered by the statute,

these opinions will be offered at trial to establish that he selected his victim on account of the victim's protected status, thus qualifying him for penalty enhancement. To stay within the realm of rationality, we must surely put to one side minor misdemeanor offenses covered by the statute, such as negligent operation of a motor vehicle (Wis. Stat. § 941.01 (1989–1990)); for it is difficult, if not impossible, to conceive of a situation where such offenses would be racially motivated. We are left, then, with the prospect of a citizen suppressing his bigoted beliefs for fear that evidence of such beliefs will be introduced against him at trial if he commits a more serious offense against person or property. This is simply too speculative a hypothesis to support Mitchell's overbreadth claim.

The First Amendment, moreover, does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent. ·Evidence of a defendant's previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like. Nearly half a century ago, in *Haupt* v. *United States*, 330 U. S. 631 (1947), we rejected a contention similar to that advanced by Mitchell here. Haupt was tried for the offense of treason, which, as defined by the Constitution (Art. III, § 3), may depend very much on proof of motive. To prove that the acts in question were committed out of "adherence to the enemy" rather than "parental solicitude," *id.*, at 641, the Government introduced evidence of conversations that had taken place long prior to the indictment, some of which consisted of statements showing Haupt's sympathy with Germany and Hitler and hostility towards the United States. We rejected Haupt's argument that this evidence was improperly admitted. While "[s]uch testimony is to be scrutinized with care to be certain the statements are not expressions of mere lawful and permissible difference of opinion with our own government or quite proper appreciation of the land of birth," we held that "these

statements . . . clearly were admissible on the question of intent and adherence to the enemy." *Id.*, at 642. See also *Price Waterhouse* v. *Hopkins*, 490 U. S. 228, 251–252 (1989) (plurality opinion) (allowing evidentiary use of defendant's speech in evaluating Title VII discrimination claim); *Street* v. *New York*, 394 U. S. 576, 594 (1969).

For the foregoing reasons, we hold that Mitchell's First Amendment rights were not violated by the application of the Wisconsin penalty-enhancement provision in sentencing him. The judgment of the Supreme Court of Wisconsin is therefore reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*