**STATE of Missouri, Appellant,**

v.

**Jason Thomas VANATTER, Respondent.**

No. 75607.

Supreme Court of Missouri,
En Banc.

Jan. 25, 1994.

Jeremiah W. (Jay) Nixon, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for appellant.

Frederick W. Martin, III, West Plains, for respondent.

PRICE, Judge.

Respondent Jason Thomas Vanatter was charged with the class D felony of ethnic intimidation in the second degree, § 574.093, RSMo Supp.1992. The trial court dismissed the ethnic intimidation charge, citing the unconstitutionality of the statute. The question before the court is whether § 574.093 violates Respondent's right to freedom of

speech under the First Amendment to the United States Constitution or article I, § 8 of the Missouri Constitution. We hold that it does not.

## I.

An information dated July 9, 1990, charged Respondent with committing the crime of ethnic intimidation "in that defendant *knowingly damaged the property* of the Church of Christ, West Plains, to wit: the front porch of the Church of Christ located at Washington Avenue, Missouri by burning a wooden cross next to said porch" (emphasis added). Respondent requested changes of judge and venue. In December of 1990, the cause was transferred from the Circuit Court of Howell County to the Circuit Court of Wright County. On October 14, 1992, Respondent filed a motion to dismiss the information, alleging the statute under which he was charged violated the First Amendment to the United States Constitution and article I, § 8 of the Missouri Constitution (1945).

Relying on a recent United States Supreme Court case, *R.A.V. v. City of St. Paul*, 505 U.S. ——, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), the trial court found that § 574.-093 violated the First Amendment and dismissed the ethnic intimidation charge against respondent on January 22, 1993. The State of Missouri appeals from the trial court's dismissal order. The State contends § 574.-093 is constitutional and cites the United States Supreme Court case, *Wisconsin v. Mitchell,* —— U.S. ——, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993), in support of the statute's constitutionality.

## II.

In 1988, the legislature of this state established the crimes of ethnic intimidation in the first degree, § 574.090, RSMo Supp.1992, and ethnic intimidation in the second degree, § 574.093, RSMo Supp.1992. These statutes provide:

### 574.090. Ethnic Intimidation in the First Degree

1. A person commits the crime of ethnic intimidation in the first degree if, by reason of any motive relating to the race, color, religion or national origin of another individual or group of individuals, he violates subdivision (1) of subsection 1 of section 569.100, RSMo [property damage in the first degree, a class D felony], or subdivision (1), (2), (3), (4), (6), (7) or (8) of subsection 1 of section 571.030, RSMo [unlawful use of a weapon, a class D felony or class B misdemeanor].

2. Ethnic intimidation in the first degree is a class C felony.

### 574.093. Ethnic Intimidation in the Second Degree

1. A person commits the crime of ethnic intimidation in the second degree if, by reason of any motive relating to the race, color, religion or national origin of another individual or group of individuals, he violates section 565.070, RSMo [assault in the third degree, a class A or C misdemeanor]; subdivisions (1), (3) and (4) of subsection 1 of section 565.090, RSMo [harassment, a class A misdemeanor]; subdivision (1) of subsection 1 of section 569.090, RSMo [tampering in the first degree, a class A misdemeanor]; subdivision (1) of subsection 1 of section 569.120, RSMo [property damage in the second degree, a class B misdemeanor]; section 569.140, RSMo [trespass in the first degree, a class B misdemeanor]; or section 574.050 RSMo [rioting, a class A misdemeanor].

2. Ethnic intimidation in the second degree is a class D felony.

Strong public policy supports § 574.090 and § 574.093. Crimes committed because of the perpetrator's hatred of the race, color, religion or national origin of the victim have the obvious tendency to ignite further violence by provoking retaliatory crimes and inciting community unrest. Hate crimes inflict substantial emotional harm on the victims and society as a whole. The legislature of this state has determined that the commission of various crimes with a motive relating to the victim's race, color, religion, or national origin should be classified as ethnic intimidation and carry strict penalties.

## III.

Respondent contends that § 574.093 violates the First Amendment, because it pro-

hibits the expression of ideas based upon content, punishing disfavored viewpoints. Respondent submits that the United States Supreme Court's opinion in *R.A.V. v. City of St. Paul, Minnesota,* —— U.S. ——, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), requires this Court to strike down § 574.093. The state argues that the more recently decided case of *Wisconsin v. Mitchell,* —— U.S. ——, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993), controls. We agree with the state that the ·Missouri statute is more similar to that upheld in *Mitchell* and is therefore constitutional. An analysis of these two holdings is determinative of the issue presented.

*R.A.V.* concerned a group of individuals who were convicted under the St. Paul Bias–Motivated Crime Ordinance for burning a wooden cross inside the fenced yard of an African–American family living in a residential neighborhood. —— U.S. at ——, 112 S.Ct. at 2541. The St. Paul ordinance provided:

> Whoever places on public or private property a symbol, object, appellation, characterization or graffiti, including but not limited to, a burning cross or Nazi swastika, which one knows or has reasonable grounds to know arouses anger, alarm, or resentment in others on the basis of race, color, creed, religion, or gender commits disorderly conduct and shall be guilty of a misdemeanor.

St. Paul, Minn.Legis.Code § 292.02 (1990).

The Supreme Court held that even assuming, *arguendo,* that all expression reached by this ordinance was proscribable under the "fighting words" doctrine, *See Chaplinski v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942), the ordinance was facially unconstitutional, because it was a content-based regulation of speech, and it failed the applicable strict scrutiny test. *R.A.V.,* —— U.S. at ——, ——, 112 S.Ct. at 2542, 2550.

*Mitchell* involved a First Amendment challenge to a Wisconsin statute that enhanced the penalty for certain specified crimes whenever the defendant intentionally selected the victim because of the victim's race, religion, color, disability, sexual orientation, national origin or ancestry. —— U.S. at ——, 113 S.Ct. at 2197. The Supreme Court

rejected the argument that the Wisconsin statute was invalid because it punished the defendant's discriminatory motive, or reason, for acting. The Court noted that courts may properly take into account a defendant's racial animosity toward his victim as an aggravating factor for sentencing purposes. —— U.S. at ——, 113 S.Ct. at 2200. *See Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983); *Dawson v. Delaware,* 503 U.S. ——, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992). The Court further noted that state and federal anti-discrimination laws that look to the motive of the actor in determining culpability have been upheld against constitutional challenges. *See Roberts v. Jaycees,* 468 U.S. 609, 628, 104 S.Ct. 3244, 3255, 82 L.Ed.2d 462 (1984); *Hishon v. King & Spalding,* 467 U.S. 69, 78, 104 S.Ct. 2229, 2235, 81 L.Ed.2d 59 (1984); *Runyon v. McCrary,* 427 U.S. 160, 176, 96 S.Ct. 2586, 2597, 49 L.Ed.2d 415 (1976).

In reconciling the *Mitchell* decision with its prior decision in *R.A.V.,* the Court stated:

> Nothing in our decision last Term in *R.A.V.* compels a different result here. That case involved a First Amendment challenge to a municipal ordinance prohibiting the use of " 'fighting words' that insult, or provoke violence, 'on the basis of race, color, creed, religion or gender.' " 505 U.S., at ——, 112 S.Ct., at 2547 (quoting St. Paul Bias—Motivated Crime Ordinance, St. Paul, Minn., Legis.Code § 292.02 (1990)). Because the ordinance only proscribed a class of "fighting words" deemed particularly offensive by the city— *i.e.,* those "that contain ... messages of 'bias-motivated' hatred," 505 U.S., at ——, 112 S.Ct., at 2547 we held that it violated the rule against content-based discrimination. See *id.,* at ——, 112 S.Ct., at 2547–2548. But whereas the ordinance struck down in *R.A.V.* was explicitly directed at expression, *i.e.,* "speech" or "messages," *id.,* at ——, 112 S.Ct., at 2547, the statute in this case is aimed at conduct unprotected by the First Amendment.

> Moreover, the Wisconsin statute singles out for enhancement bias-inspired conduct because this conduct is thought to inflict greater individual and societal harm. For

example, according to the State and its *amici*, bias-motivated crimes are more likely to provoke retaliatory crimes, inflict distinct emotional harms on their victims, and incite community unrest. See, *e.g.,* Brief for Petitioner 24–27; Brief for United States as *Amicus Curiae* 13–15; Brief for Lawyers' Committee for Civil Rights Under Law as *Amicus Curiae* 18–22; Brief for the American Civil Liberties Union as *Amicus Curiae* 17–19; Brief for the Anti–Defamation League et al. as *Amici Curiae* 9–10; Brief for Congressman Charles E. Schumer et al. as *Amici Curiae* 8–9. The State's desire to redress these perceived harms provides an adequate explanation for its penalty-enhancement provision over and above mere disagreement with offenders' beliefs or biases. As Blackstone said long ago, "it is but reasonable that among crimes of different natures those should be most severely punished, which are the most destructive of the public safety and happiness." 4 W. Blackstone, Commentaries *16.

—— U.S. at ——, 113 S.Ct. at 2200–01. Thus, while *R.A.V.* prohibits the criminalization of expression, *Mitchell* allows the enhancement of punishment for otherwise criminal conduct that is bias-inspired.

### IV.

■■■ An examination of § 574.093 reveals that it is more like the Wisconsin statute upheld in *Mitchell* than the St. Paul ordinance struck down in *R.A.V.* Unlike the ordinance in *R.A.V.,* § 574.093 is not aimed at proscribing expression. This Missouri statute is aimed at and expressly requires conduct that independently is subject to criminal sanction. Criminal conduct is not afforded First Amendment protection.

While § 574.093 admittedly creates a new motive-based crime, its practical effect is to provide additional punishment for conduct that is already illegal but is seen as especially harmful because it is motivated by group hatred. It is clear from *Mitchell* that enhanced punishment for criminal conduct on account of a defendant's motives of bias or

hatred toward a protected group is consistent with the United States Constitution,[1] —— U.S. at ——, 113 S.Ct. at 2201. Missouri's ethnic intimidation statutes are a rational and legitimate means to deal with a serious societal problem.

The judgment of the trial court is reversed and the case is remanded for trial.

All concur.

---

1. Respondent also asserted that § 574.093 violated art. I, § 8 of the Missouri Constitution. There are many instances in which it might be argued that the Missouri Constitution provides more extensive rights than are provided by the United States Constitution. Respondent has made no argument why this would be the case in the present matter.