SIXTH DIVISION
 September 20, 1996

No. 1-95-2141

In re VLADIMIR P., a Minor ) APPEAL FROM THE 
 ) CIRCUIT COURT OF
(The People of the State of Illinois, ) COOK COUNTY 
 )
 Petitioner-Appellee, )
 ) 
 v. )
 )
Vladimir P., ) HONORABLE
 ) CATHERINE HABERKORN,
 Respondent-Appellant). ) JUDGE PRESIDING.

 JUSTICE McNAMARA delivered the opinion of the court: 
 After an adjudicatory hearing, the trial court, juvenile
division, found minor respondent Vladimir P. to be delinquent and
adjudicated him as a ward of the court. The delinquency findings
were based on the aggravated assault (720 ILCS 5/12-2 (West
1994)) and hate crime (720 ILCS 5/12-7.1 (West 1994)) against
Levi Bergovoy. The trial court placed respondent on probation
for one year and ordered him to perform 200 hours of community
service. On appeal, respondent concedes that he was properly
found guilty of aggravated assault. He argues, however, that the
evidence was insufficient to prove him guilty of a hate crime and
that, in any event, the hate crime statute is unconstitutional. 
The relevant facts are as follows.
 At approximately 3:30 p.m. on June 22, 1994, Bergovoy, a 13-
year-old Orthodox Jewish boy, was walking home. He was wearing a
head covering (yarmulke) and prayer tassels (tzitzis),
symbolizing his religious beliefs. Bergovoy saw respondent, a
co-respondent named Igor, and a third youth sitting on the steps
of an apartment building. One or more of the youths started
shouting at Bergovoy: "Fuck you Jew, get out of here Jew, I am
going to kill you Jew, fuck you Jew." Bergovoy then saw a metal
object fly in front of him. It was a knife. The boy became
frightened that the youths would beat him up, and he ran home. 
He did not know who threw the knife or yelled at him.
 Officer Val Roytman of the Chicago police department
testified that after talking to Bergovoy, he went to the scene of
the incident. He found the knife handle and blade. Roytman took
the three youths into custody. At the station, respondent told
Roytman that he and his two friends were playing with a knife. 
At some point the knife broke in two. Respondent said that they
were bored and that Bergovoy looked "funny" when he went by. 
Igor then threw the knife handle while respondent threw the knife
blade.
 Bergovoy's mother testified that when her son arrived home
he was nervous and frightened. He told her what the youths had
yelled and that one of them threw a knife at him. Mrs. Bergovoy
took her son outside to see who did this to him. When they
reached the sidewalk, Igor approached and yelled, "Fuck you Jew." 
She grabbed her son, ran into their home and called the police.
 Respondent's mother testified for respondent. He was 15
years old. Respondent knew what Bergovoy's head covering and
tassels represented because he was Jewish. Respondent and his
family had come to the United States from Russia two years prior
to this incident. They left Russia because, as Jewish people,
they did not feel safe.
I. CONSTITUTIONALITY OF THE ILLINOIS HATE CRIME STATUTE
 We initially consider respondent's contention that the
Illinois hate crime statute (720 ILCS 5/12-7.1 (West 1994)) is
unconstitutional. The relevant portion of the statute reads as
follows:
 "(a) A person commits hate crime when, by
 reason of the actual or perceived race, color,
 creed, religion, ancestry, gender, sexual
 orientation, physical or mental disability, or
 national origin of another individual or group of
 individuals, he commits assault, battery,
 aggravated assault, misdemeanor theft, criminal
 trespass to residence, misdemeanor criminal damage
 to property, criminal trespass to vehicle, criminal
 trespass to real property, mob action or disorderly
 conduct as these crimes are defined in Sections 12-
 1, 12-2, 12-3, 16-1, 19-4, 21-1, 21-2, 21-3, 25-1,
 and 26-1 of this Code, respectively, or harassment
 by telephone as defined in Section 1-1 of the
 Obscene Phone Call Act." 720 ILCS 5/12-7.1 (West 1994).
Respondent contends that the statute violates his rights to free
speech and thought, due process, and equal protection under the
law guaranteed by the first and fourteenth amendments of the
United States Constitution and article I, sections 2 and 4, of
the Illinois Constitution of 1970. The State replies that
respondent's constitutional arguments have already been disposed
of by the United States Supreme Court's decision in Wisconsin v.
Mitchell, 508 U.S. 476, 124 L. Ed. 2d 436, 113 S. Ct. 2194
(1993), and this court's decision in People v. Johnston, 267 Ill.
App. 3d 526, 641 N.E.2d 898 (1994).
 In Wisconsin v. Mitchell, the question before the United
States Supreme Court was whether a Wisconsin penalty-enhancement
statute was unconstitutional. The statute at issue increased the
maximum penalty for an offense where a defendant
"'[i]ntentionally selects the person against whom the crime ...
is committed ... because of the race, religion, color,
disability, sexual orientation, national origin or ancestry of
that person....'" Mitchell, 508 U.S. at 480, 124 L. Ed. 2d at
442, 113 S. Ct. at 2197, quoting Wis. Stat. 939.645(1)(b) (1989-
90). The Supreme Court rejected Mitchell's argument that the
Wisconsin statute punished offenders for their bigoted thoughts
and beliefs. Instead, the Court found that the statute was
"aimed at conduct unprotected by the First Amendment." Mitchell,
508 U.S. at 487, 124 L. Ed. 2d at 447, 113 S. Ct. at 2201. 
According to the Court, "the Wisconsin statute singles out for
enhancement bias-inspired conduct because this conduct is thought
to inflict greater individual and societal harm." Mitchell, 508
U.S. at 487-88, 124 L. Ed. 2d at 447, 113 S. Ct. at 2201. "The
State's desire to redress these perceived harms provides an
adequate explanation for its penalty-enhancement provision over
and above mere disagreement with offenders' beliefs or biases." 
Mitchell, 508 U.S. at 488, 124 L. Ed. 2d at 447, 113 S. Ct. at
2201. The Court in Mitchell also rejected the argument that the
statute was "unconstitutionally overbroad because of its
'chilling effect' on free speech." Mitchell, 508 U.S. at 488,
124 L. Ed. 2d at 447, 113 S. Ct. at 2201. The crux of this
argument was that an individual would suppress his thoughts or
beliefs for fear that they might be used as evidence against him
if he committed a crime covered by the statute in the future. 
The Court found this argument "simply too speculative a
hypothesis." Mitchell, 508 U.S. at 489, 124 L. Ed. 2d at 447-48,
113 S. Ct. at 2201. Thus, the Supreme Court rejected Mitchell's
arguments that the Wisconsin statute punished thought and was
unconstitutionally overbroad. 
 In People v. Johnston, decided after Mitchell, defendant
Johnston challenged the constitutionality of section 12-7.1 (Ill.
Rev. Stat. 1989, ch. 38, pars. 12-7.1(a),(b) (now 720 ILCS 12-
7.1(a),(b) (West 1994)). Johnston, 267 Ill. App. 3d at 529, 641
N.E.2d at 900. Section 12-7.1, now titled "Hate crime," was then
titled "Ethnic intimidation." On appeal, Johnston contended that
the ethnic intimidation statute violated "the due process and
equal protection clauses of the fourteenth amendment and also ***
the free speech provision of the United States Constitution." 
Johnston also contended that the statute violated "the State
Constitution's due process and free speech provisions of article
I." Johnston, 267 Ill. App. 3d at 529, 641 N.E.2d at 900. In
dismissing these contentions, the Johnston court stated:
 "Johnston admits in his reply brief that
 his United States Constitution claims against
 the ethnic intimidation statute have been
 disposed of by the United States Supreme
 Court decision in Wisconsin v. Mitchell
 [citation]. Nevertheless, Johnston's reply
 brief attempts to raise the issue that the
 statute violates the Illinois Constitution of
 1970 in article I, sections 2 and 4
 [citation]. However, Johnston cites neither
 any language of article I, any court
 decisions, nor any legislative history to
 support his contention, and we find no
 support for a theory that the Illinois
 Constitution grants the scope of protection
 Johnston seeks to nullify this statute. A
 statute carries a strong presumption of
 constitutionality, and the burden is on the
 party challenging it to establish its
 constitutional invalidity. [Citation.] That
 burden was not met in this case." Johnston,
 267 Ill. App. 3d at 535, 641 N.E.2d at 904.
 In the present case, we agree with the State that Wisconsin
v. Mitchell and People v. Johnston essentially dispose of
respondent's constitutional arguments. Respondent argues,
however, that Mitchell is inapplicable because the statute
reviewed there was a penalty-enhancement statute while section
12-7.1 creates a separate offense. Respondent also argues that
neither Mitchell nor Johnston fully resolves whether hate crime
statutes violate offenders' due process and equal protection
rights. Thus, we will elaborate.
 A. Freedom of Expression 
 Initially, under Mitchell, we reject respondent's argument
that section 12-7.1 creates a thought crime in violation of the
first amendment. U.S. Const., amend. I. It is true, as
respondent points out, that the Wisconsin statute differs from
the Illinois statute in that the statute in Mitchell was a
penalty-enhancement statute while section 12-7.1 creates a crime
within itself. Nevertheless, this distinction does nothing to
diminish the applicability of the Supreme Court's analysis on the
issue of whether section 12-7.1 impermissibly criminalizes
thought. As in Mitchell, we find that the statute at issue here
does not punish an individual for merely thinking hateful
thoughts or expressing bigoted beliefs. Instead, section 12-7.1
punishes an offender's criminal conduct in choosing a victim by
reason of those beliefs or hatred, and then committing one of the
criminal acts included in section 12-7.1. As the unanimous Court
in Mitchell stated, "a physical assault is not by any stretch of
the imagination expressive conduct protected by the First
Amendment." Mitchell, 508 U.S. at 484, 124 L. Ed. 2d at 444, 113
S. Ct. at 2199. 
 Respondent also argues that the Illinois statute
impermissibly makes speech an element of a hate crime. We
disagree. Even without evidence of bigoted speech, a hate crime
can be committed if the trier of fact, through circumstantial
evidence, concludes beyond a reasonable doubt that the victim was
chosen "by reason of [his] actual or perceived race, color,
creed, religion" or other core characteristics enumerated in
section 12-7.1. 720 ILCS 5/12-7.1 (West 1994). Furthermore, it
is well settled that the first amendment does not prohibit the
evidentiary use of speech to establish the elements of a crime or
to prove motive or intent. Mitchell, 508 U.S. at 484, 124 L. Ed.
2d at 444, 113 S. Ct. at 2199. In the present case, the
statements -- "Fuck you Jew, get out of here Jew, I am going to
kill you Jew, fuck you Jew" -- were not elements of the crime. 
Rather, along with evidence of Bergovoy's manner of dress, they
were properly introduced by the State as circumstantial evidence
that Bergovoy was chosen as a victim because he was Jewish. 
 We also reject respondent's argument that section 12-7.1 is 
"unconstitutionally overbroad" in that it has a "chilling effect"
on free speech causing a person to suppress his beliefs for fear
of them being used as evidence against him in the future. This
identical theory was flatly rejected by the United States Supreme
Court in Mitchell. Stating that the "[t]he sort of chill
envisioned here is far more attenuated and unlikely than that
contemplated in traditional 'overbreadth' cases," the Mitchell
Court dismissed this argument as "too speculative." Mitchell,
508 U.S. at 488, 124 L. Ed. 2d at 447, 113 S. Ct. at 2201. 
 We further note that other states have upheld statutes, like
section 12-7.1, that create a separate offense for choosing a
victim of an underlying crime based on certain characteristics
such as race and religion. The state Supreme Courts of Ohio,
Missouri, Iowa, and Washington have all found Mitchell
controlling and dispositive of first amendment challenges to such
statutes. See State v. Wyant, 68 Ohio St. 3d 162, 164, 624
N.E.2d 722, 724 (1994)(Wright, J., dissenting); State v.
Vanatter, 869 S.W.2d 754 (Mo. 1994); State v. McKnight, 511
N.W.2d 389 (Iowa 1994), cert. denied McKnight v. Iowa, ___ U.S.
___, 128 L. Ed. 2d 675, 114 S. Ct. 2116 (1994); State v. Talley,
122 Wash. 2d 192, 858 P.2d 217 (1993). In Vanatter, the Supreme
Court of Missouri explained: 
 "While 574.093 admittedly creates a new
 motive-based crime, its practical effect is
 to provide additional punishment for conduct
 that is already illegal but is seen as
 especially harmful because it is motivated by
 group hatred. It is clear from Mitchell that
 enhanced punishment for criminal conduct on
 account of a defendant's motives of bias or
 hatred toward a protected group is consistent
 with the United States Constitution." 
 Vanatter, 869 S.W.2d at 757.
We agree with this reasoning and find that section 12-7.1 does
not violate the first amendment. U.S. Const., amend. I.
 Finally, we reject respondent's argument that even if the
first amendment of the United States Constitution is
inapplicable, section 12-7.1 violates article I, section 4, of
the Illinois Constitution. Defendant argues that this section
affords him a broader freedom of expression than the first
amendment. Yet, it is unnecessary to determine this based on our
finding that section 12-7.1 does not punish expression, it
punishes criminal conduct. Furthermore, we note that the
Johnston court specifically stated that it found "no support for
a theory that the Illinois Constitution grants the scope of
protection" necessary to nullify section 12-7.1. Johnston, 267
Ill. App. 3d at 535, 641 N.E.2d at 904. Thus, this argument must
fail.
 B. Due Process
 We next turn to respondent's due process arguments. 
Respondent argues that section 12-7.1 is "impermissively vague"
and gives "inadequate notice of prohibited conduct" in violation
of the fourteenth amendment of the Federal Constitution and
article I, section 2, of the State Constitution. Initially,
respondent points to the statutory language "by reason of" and
argues that this language makes it unclear whether a core
characteristic listed in section 12-7.1 must be the sole reason
for choosing a victim or merely one of several reasons. We
disagree. We find nothing in the language of the statute that
would prohibit a person with "mixed motives" from being
prosecuted under the statute. Nor do we agree with respondent
that this language promotes arbitrary enforcement by police
officers. The phrase "by reason of" clearly indicates for police
officers and offenders that there must be a causal connection
between a victim's race, religion, etc., and the offender's
reason for choosing that person as a victim. In finding that the
phrase "by reason of" is not unconstitutionally vague, we note
with approval the analysis of the Supreme Court of Washington. 
In State v. Talley, that court rejected a similar argument in the
following manner:
 "[I]n ordinary usage 'because of' means 'by
 reason of' or 'on account of'. [Citation.] 
 When read as a whole, this language is clear
 and provides adequate notice that the
 prohibited conduct is the selection of the
 crime victims from certain specified
 categories." Talley, 122 Wash. 2d at 213,
 858 P.2d at 229. 
 We are also unpersuaded by respondent's attempt to
illustrate the vagueness of section 12-7.1 by offering
hypothetical situations that he claims "may or may not" be
covered by the statute. In fact, our research reveals that a
recent decision by the fifth district of this court resolves the
central question in each of respondent's hypotheticals. For
example, respondent argues that it is unclear whether section 12-
7.1 covers a situation where a bigoted white man threatens or
attacks another white man because the second man dates an
African-American woman. In In re B.C., 277 Ill. App. 3d 1085,
661 N.E.2d 1148 (1996), the court held that, in situations where
an alleged victim is neither a member of the group to whom the
hatred is directed towards nor perceived by the offender to be a
member of that group, section 12-7.1 is inapplicable. Thus, in
light of the B.C. decision, and our agreement with the reasoning
in Talley, we reject respondent's void-for-vagueness argument and
find that his federal and state due process rights have not been
violated. 
 C. Equal Protection
 We next turn to respondent's argument that section 12-7.1
violates his right to equal protection under the law of the
United States and the State of Illinois. Specifically,
respondent argues that, because of the beliefs they hold and
express, offenders of section 12.7-1 are treated differently from
others who commit the same predicate offenses enumerated in
section 12-7.1. Yet, proponents of hate crime statutes
persuasively counter such an equal protection argument by showing
that offenders of hate crimes are simply not similarly situated
with those who commit the crimes for different reasons. Crimes
Motivated By Hatred: The Constitutionality and Impact of Hate
Crime Legislation in the United States, 1 Syracuse J. Legis. &
Pol'y 29, 58 (Spring 1995) (hereinafter Crimes Motivated By
Hatred). It has been widely documented that victims of bias-
motivated crimes suffer harmful psychological effects, and these
crimes are more likely to provoke retaliatory crimes and incite
political unrest. Mitchell, 508 U.S. at 488, 124 L. Ed. 2d at
447, 113 S. Ct. at 2201; Crimes Motivated By Hatred, 1 Syracuse
J. Legis. & Pol'y at 32-34. "In light of the greater degree of
harm suffered by minority groups that have been systematically
victimized, the majority of courts across the country have agreed
that they deserve special attention." Crimes Motivated By
Hatred, 1 Syracuse J. Legis. & Pol'y at 58; see, e.g., Talley,
122 Wash. 2d at 216, 858 P.2d at 230 ("We find no violation of
equal protection"). We likewise feel that the Illinois General
Assembly justifiably enacted section 12-7.1, and we find no need
to invalidate the statute on equal protection grounds or on any
other constitutional basis. 
II. PROOF BEYOND A REASONABLE DOUBT
 We now turn to respondent's contention that the evidence was
insufficient to prove him guilty of a hate crime.
 The State must prove the offenses alleged in delinquency 
petitions beyond a reasonable doubt. In re W.C., 167 Ill. 2d
307, 657 N.E.2d 908 (1995). When a minor challenges that
sufficiency of evidence on appeal, we will not overturn a trial
court's finding unless, after reviewing the evidence in the light
most favorable to the prosection, no rational trier of fact could
have found the offense beyond a reasonable doubt. W.C., 167 Ill.
2d at 336, 657 N.E.2d at 923. 
 In challenging the sufficiency of the evidence as to the
hate crime, respondent relies principally on the fact that there
was no evidence showing that he shouted at Bergovoy. The
evidence, however, demonstrates that, even if it was Igor who
uttered the offensive religious slurs, respondent made no effort
to leave the scene or disassociate himself from Igor. Rather, as
respondent himself told Officer Roytman, Igor threw the knife
handle at Bergovoy and respondent followed by throwing the blade. 
Under these circumstances, the trier of fact was entitled to
infer that the youths were not acting independently, but rather
in concert and that respondent participated in all of the acts.
 Respondent suggests that since he is Jewish, he cannot be
guilty of a hate crime under these circumstances. We disagree. 
Immediately after hearing anti-Semitic shouts, respondent
admittedly committed an assault on the 13-year-old target of the
abuse. The trial judge could properly infer that respondent's
motive for his conduct was not the result of boredom, but was
caused "by reason of" Bergovoy's religion. The State proved
respondent's participation in the hate crime beyond a reasonable
doubt.
 Accordingly, the judgment of the circuit court of Cook
County is affirmed.
 Judgment affirmed.
 ZWICK, P.J., and RAKOWSKI, J., concur.