KITCHENS, Justice,
Dissenting.
¶ 45. Although I agree with Justice Dickinson’s conclusion that this case is controlled by the U.S. Supreme Court’s decision in Republican Party v. White, 536 U.S. 765, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002), I write separately to express my conviction that, where our ethical rules collide with the freedom of speech, our canons must yield to our constitutions.
¶ 46. Credibility is the fresh air by which courts breathe life into their decisions. Without credibility, judicial opinions cannot go forth from the courthouse to spread the rule of law. Without credibility, a court’s written word is worthless. Without credibility, judges are reduced from arbiters of justice to men and women vainly whispering from a lonely mountaintop. No justice voting today would say that the Code of Judicial Conduct is not a critically important standard by which the credibility of our state’s judiciary is measured.
¶ 47. But unwavering fidelity to constitutional principles must always transcend and trump even the loftiest and most laudable goals and guidelines for our state judiciary. Our democracy has survived for more than two centuries for no reason more important than courts’ faithful protection of unfettered political debate, a freedom deemed sacred by our state constitution. Miss. Const. art. 3, § 13. Long have our nation’s judges recognized that “[i]f there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.” Texas v. Johnson, 491 U.S. 397, 414, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). “Accordingly, a function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger.” Terminiello v. Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1949).
¶ 48. Today, we are asked to pass judgment in a case that places these two tenets in direct tension, positing a question of whether we afford greater importance to our ethical rules or our dedication to free speech. I agree with Justice Dickinson that the majority’s distinction of this case from the U.S. Supreme Court’s holding in Republican Party v. White is misplaced. But I would also hold that, to the extent the Code of Judicial Conduct regulates speech, it is powerless to sanction.
¶ 49. To be sure, the Mississippi Constitution’s commands that judges refrain from “willful misconduct” and “conduct prejudicial to the administration of justice,” Miss. Const. art. 6, § 177A, are not facially violative of the First Amendment. The U.S. Supreme Court has gone to great lengths to distinguish speech, which the First Amendment fiercely protects, and conduct, which it does not protect. See, e.g., Wisconsin v. Mitchell, 508 U.S. 476, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993). Likewise, to the extent that the Code of Judicial Conduct implicates pure conduct, I do not suggest that it trespasses upon the ground staked off by the First Amendment and our state Constitution, and I would not subject decisions thereunder to great scrutiny. See, e.g., United States v. O’Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 *120 (1968). But when government seeks to level the sword of judgment against a speaker because of the political content of his message, rather than for the act of speaking, then the restriction “must be subjected to the most exacting scrutiny.” Boos v. Barry, 485 U.S. 312, 321, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). The majority erroneously applies the lesser standard that the U.S. Supreme Court has developed to address the speech of public employees. Maj. Op. at 18 (citing Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). The high court, the Fifth Circuit Court of Appeals, and this Court all have made abundantly clear that elected judges are no mere “public employees” but moderators of public debate that, like all elected officials, enjoy a “role that ... makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance.” Republican Party v. White, 536 U.S. 765, 781-82, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002) (quoting Wood v. Georgia, 370 U.S. 375, 395, 82 S.Ct. 1364, 8 L.Ed.2d 569 (1962)). See also Jenevein v. Willing, 493 F.3d 551, 558 (5th Cir.2007) (applying strict scrutiny in a case involving a Texas judge punished for public speech); Miss. Comm’n on Judicial Performance v. Wilkerson, 876 So.2d 1006, 1011 (Miss.2004) (applying strict scrutiny in the case of a judge who wrote in a local newspaper that homosexuals belonged in mental institutions).
¶ 50. Under this degree of scrutiny, a speech regulation comports with the First Amendment only when it has been narrowly tailored to address a compelling state interest, Boos, 485 U.S. at 321, 108 S.Ct. 1157, and any restriction that punishes constitutionally protected speech is necessarily overbroad. See United States v. Playboy Entm’t Group, 529 U.S. 803, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). In my view, Judge Osborne’s comments were far beneath the dignity of a judge. But just as clearly, his comments addressed a political issue, and not just any political issue, but the seminal political issue of this state’s history: race. Therefore, any provision of legal force that punishes Judge Osborne for that speech violates the First Amendment of the U.S. Constitution and Article 3, Section 13 of the Mississippi Constitution.
¶ 51. Ultimately, despite the White Court’s attention to “disputed legal and political issues,” White, 536 U.S. at 768, 122 S.Ct. 2528, our free-speech jurisprudence makes clear that the government violates the First Amendment and Section 13 not only by punishing a speaker for engaging in political speech, but also by enumerating the topics upon which speech is tolerated, “[f]or it is a prized American privilege to speak one’s mind, although not always with perfect good taste, on all public institutions.” Bridges v. California, 314 U.S. 252, 270, 62 S.Ct. 190, 86 L.Ed. 192 (1941). See also Boos, 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (reiterating that content-based restrictions on speech will be subjected to strict scrutiny). “It is simply not the function of government to select which issues are worth discussing or debating in the course of a political campaign.” White, 536 U.S. at 782, 122 S.Ct. 2528 (Scalia, J.) (quoting Brown v. Hartlage, 456 U.S. 45, 60, 102 S.Ct. 1523, 71 L.Ed.2d 732 (1982)).
¶ 52. I would hold, therefore, that an application of the Code of Judicial Conduct violates the First Amendment and Section 13 not only when it punishes speech regarding “disputed legal and political issues,” but also when it punishes speech regarding any political issue, disputed or otherwise. For that reason, I would find that the Mississippi Commission on Judicial Performance is powerless to sanction *121 Judge Osborne for the message that he delivered.
¶ 53. Furthermore, because the First Amendment’s protections also extend to communicative conduct and include the freedom of association, Roberts v. United States Jaycees, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), I would find that our federal and state constitutions forbid sanction against Judge Osborne for membership in the Greenwood Voters League or any other political organization. “Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as [the U.S. Supreme Court] has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly.” NAACP v. Ala. ex rel. Patterson, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Therefore, if we recognize, as we should, that Judge Osborne’s political speech fell within the protections of Section 13 and the First Amendment, then we must also recognize that the association he undertook for the expression of those ideas likewise enjoyed constitutional protection.
¶ 54. Today’s decision not only violates the protections afforded to Judge Osborne under the First Amendment and Section 13 of the Mississippi Constitution but also deprives the voters of this state the benefit of full, unfettered debate by their judicial candidates and officeholders. Under our state’s system of judicial elections, the decision of whether an outspoken judge’s comments warrant removal rests properly with his constituents.
¶ 55. Judge Osborne’s rhetoric sits no more easily with me than with any other justice voting today. But “[i]f the provisions of the Constitution be not upheld when they pinch, as well as when they comfort, they may as well be abandoned.” Home Building & Loan Ass’n v. Blaisdell, 290 U.S. 398, 483, 54 S.Ct. 231, 78 L.Ed. 413 (1934) (Sutherland, J., dissenting). Accordingly, I dissent.
GRAVES, P.J. AND DICKINSON, J., JOIN THIS OPINION IN PART.