**LTJG Richard Dirk SELLAND**

v.

**The Honorable William PERRY, et al.**

**Civ. No. Y–95–1145.**

United States District Court,
D. Maryland.

Oct. 31, 1995.

Stephen K. Davidson, Washington, D.C.; Antonia B. Ianello, Washington, D.C.; Benjamin R. Barnett, Washington, D.C., for Plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, D.C.; Lynne Ann Battaglia, United States Attorney, Baltimore, MD; Vincent M. Garvey, Washington, D.C.; Joseph W. Lobue, Washington, D.C., for Defendants.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

In response to Lieutenant Richard Dirk Selland's challenge to the Navy's decision to separate him from service under the "Don't Ask Don't Tell" policy (hereinafter "Policy"), the Defendants seek summary judgment.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. Since the parties only disagree on the legal consequences of the underlying facts, this case is appropriate for summary judgment.

## I. BACKGROUND

The Policy in question is part of the Defense Authorization Act of 1994, which was enacted on November 30, 1993. In formulating the Policy Congress considered extensive testimony from interested parties within and without the military as well as the importance of maintaining an effective military defense capability. *See Policy Concerning Homosexuality in the Armed Forces: Hearing Before the Senate Comm. on Armed Services,* 103d Cong., 2d Sess. (1993); *Policy Implications of Lifting the Ban on Homosexuals in the Military: Hearings Before the House Comm. on Armed Services,* 103d Cong., 1st Sess. (1993); *Assessment of the Plan to Lift the Ban on Homosexuals in the Military: Hearings Before the Military Forces and Personnel Subcomm. of the House Comm. on Armed Services,* 103d Cong., 1st Sess. (1993). Evidently, Congress gave great weight to the opinion of military professionals that unit cohesion is crucial to combat capability and that homosexual conduct creates an unacceptable risk to morale, good order and discipline in the fundamentally unique military society, for the legislative findings make specific reference to these factors. *See* 10 U.S.C. § 654(a) (1994).

The Policy requires the military to separate members from service if, after following procedures set forth in Department of Defense regulations, it is found that the member has (1) "engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts," (2) "stated that he or she is a homosexual or bisexual" or (3) "has married or attempted to marry a person known to be of the same biological sex." 10 U.S.C. § 654(b). Separation is not required if a member states he is homosexual if the member demonstrates that he is "not a person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts." 10 U.S.C. § 654(b)(2).

The regulations implementing the Policy provide that officers may be separated on the grounds contained in the statute. Separation of Regular Commissioned Officers, DoD Directive 1332.30. In addition, the Directive

outlines a procedure whereby a statement of homosexual identity "creates a rebuttable presumption that the officer engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts" and the officer is allowed to present evidence to the contrary. *Id.* at ¶ C.1.b.

Lieutenant Selland was assigned to serve as the Supply Officer on the USS Hammerhead, a fast-attack nuclear submarine, upon his graduation from Supply School. Jokes from the crew members about his homosexuality led Selland to seek the counsel of a Navy chaplain, who urged him to discuss the matter with Commander Karl M. Hasslinger. On January 21, 1993, Selland told Hasslinger that he was homosexual and involved in a monogamous relationship. Transcript of the Board of Inquiry Investigation at 39–40, 42, 125. After informing his superior about the situation, Hasslinger told Selland to leave the ship. The following day Selland was assigned to shore duty and was notified that the Navy would initiate separation proceedings against him. Selland obtained a preliminary injunction enjoining the Navy from proceeding with his separation. *See Selland v. Aspin,* 832 F.Supp. 12, 16 (D.D.C.1993). The suit was later dismissed by stipulation after the current Policy became effective.

The Navy renewed separation proceedings against Selland pursuant to the current Policy. On July 12, 1994 a Board of Inquiry convened in Norfolk, Virginia to determine whether Selland had violated the Policy. During the voir dire examination of the Board panel the following exchange occurred between Captain Dale J. Feltes, a member of the Board, and Selland's Navy counsel:

Counsel: Do you believe that an acknowledged homosexual can be an effective Navy officer?

\* \* \* \* \* \*

Feltes: No, I don't.

Counsel: Would you personally have any trouble serving with someone who was gay?

\* \* \* \* \* \*

Feltes: Yes. I would.

Transcript of Board of Inquiry Investigation at 16. The presiding Legal Advisor denied a challenge to Feltes' fitness to serve on the panel based on these statements. During the proceeding, Selland introduced evidence demonstrating his contributions to the United States Navy but did not attempt to rebut the presumption of homosexual conduct or disclaim an intention to engage in future homosexual acts as required by the Policy. Transcript of the Board of Inquiry Investigation at 125. The three-member Board of Inquiry unanimously recommended that Selland be separated from the service. The Board of Review rejected Selland's appeal, and on March 13, 1995 the Secretary of the Navy approved the discharge of Selland.

Selland filed this suit challenging the constitutionality of the Policy as applied to him, and on April 26, 1995 this Court granted a preliminary injunction preventing the Navy from discharging Selland for at least six months.

## II. FIRST AMENDMENT

Homosexual acts can be prohibited by the military. *See Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986). Selland claims that the Policy violates his First Amendment right to free speech because the separation was based on his statement that he is homosexual. The First Amendment provides in relevant part that "Congress shall pass no law ... abridging the freedom of speech...." U.S. Const. amend. I.

To find a violation of the Free Speech clause, it is first necessary to determine that the Policy restrains speech in some manner. Unquestionably Selland's admission of homosexuality, made to his chaplain and commanding officer on board the submarine, initiated the separation proceedings against him, because this statement gave rise to a presumption that he engages in homosexual acts. The government argues that the Policy does not implicate the First Amendment because the admission of homosexuality is only used as evidence of homosexual conduct and claims this is analogous to the facts of *Wisconsin v. Mitchell,* —— U.S. ——, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993), in which the

Supreme Court held that Wisconsin could enhance a criminal sentence after inferring a racial motivation for assault from remarks made by the defendant, and that the "First Amendment does not prohibit the evidentiary use of speech to establish the elements of a crime or the motive or intent. . . ." *Id.* at ——, 113 S.Ct. at 2201.

There is much force to the government's argument. Just as a jury might infer a criminal violation from statements of the accused, the Navy infers prohibited homosexual acts from admissions of homosexuality. This inference follows the common sense notion that those who identify themselves as homosexual have engaged and will engage in homosexual acts. Selland's statements that he was homosexual and in a relationship were used in an administrative hearing to determine whether he had committed, or had the propensity to commit, homosexual acts, and he was given the opportunity to offer evidence to the contrary.

But the Policy will probably inhibit members from expressing their homosexuality. *Cf. Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston,* —— U.S. ——, ——, 115 S.Ct. 2338, 2346, 132 L.Ed.2d 487 (1995) (finding that participation of group in St. Patrick's Day parade was expressive because of their self-identification as homosexual). Even though any inhibition would only be a secondary effect of the valid prohibition on homosexual acts, the sanctity of the First Amendment among the constellation of constitutional rights means that even incidental infringements on speech are closely examined.

 The right to free speech must be analyzed in light of the "plenary control" over the Armed Forces granted to the Congress and the President in Article I, Section 8 and Article II, Section 2 of the Constitution. The Constitutional responsibility of the legislative and executive branches requires that when evaluating whether a particular restriction is justified, "courts must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest." *Goldman v. Weinberger,* 475 U.S. 503, 507, 106 S.Ct. 1310, 1313, 89 L.Ed.2d 478 (1986). Deference is warranted when the policy in question concerns the "complex, subtle, and professional decisions as to the composition, training, equipping and control of a military force," *Gilligan v. Morgan,* 413 U.S. 1, 10, 93 S.Ct. 2440, 2446, 37 L.Ed.2d 407 (1973), and is a "studied choice of one alternative in preference to another for furthering that goal." *Rostker v. Goldberg,* 453 U.S. 57, 72, 101 S.Ct. 2646, 2655, 69 L.Ed.2d 478 (1981). When considering particular actions, deference gives a military commander appropriate discretion "to avert what he perceives to be a clear danger to the loyalty, discipline, or morality of troops . . . under his command." *Greer v. Spock,* 424 U.S. 828, 840, 96 S.Ct. 1211, 1218, 47 L.Ed.2d 505 (1976).

Thus, when balancing First Amendment rights against military policy, the Supreme Court has taken the position that the "fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it." *Parker v. Levy,* 417 U.S. 733, 758, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439 (1974). The relaxed restrictions of the First Amendment in this context permit the military to discipline a doctor who urged disobedience, *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), to ban campaign literature and political speeches on a partly open military base, *Greer v. Spock,* 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976), to require prior restraint on the right to circulate petitions on bases, *Brown v. Glines,* 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980), and to prevent certain persons from entering a military base during an "open house," *United States v. Albertini,* 472 U.S. 675, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985). Similarly, it was held that a General could prohibit door-to-door distribution of advertising circulars in residential areas of a military base. *Shopco Distribution Co., Inc. v. Commanding General,* 885 F.2d 167 (4th Cir.1989).

The general principle of deference is applicable to review of the Navy's decision to separate Selland. There is no question relating to the constitutionality of the stated objective of the Policy to enforce a prohibition on homosexual acts. *See Bowers v. Hard-*

*wick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986); *Dronenburg v. Zech,* 741 F.2d 1388 (D.C.Cir.1984). Congress enacted the Policy when, after long deliberation, it determined that homosexual acts are disruptive to the military's mission and the military must be allowed to take prompt precautionary measures to prevent such disruption. In light of the Constitutional prerogative over the Armed Forces given to Congress and the President, this Court is convinced it should not revisit the findings that underlie the "Don't Ask Don't Tell" policy and must defer to the military's decision that its unique mission of maintaining readiness for armed conflict requires initiation of separation proceedings at the earliest possible moment. It would be improper for this Court to rule that the Navy should have retained Selland on the crew until he committed a homosexual act after Selland stated that he was homosexual in the close confines of an attack submarine.

The Policy is designed to prevent homosexual acts and any incidental burden on speech resulting from its application does not violate the First Amendment.

### III. STATUS

■ Although the Policy does not regulate speech *qua* speech, Selland argues that it imposes a sanction on his status as a homosexual and is thus unconstitutional under the holding of *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

The Policy, insofar as it allows separation solely on the basis of "propensity" to commit homosexual acts, could be interpreted as imposing a sanction on homosexual status. Indeed, it is unclear what factors will rebut the presumption of "propensity" to commit homosexual acts so that a member's mere homosexual "orientation" will not require his separation from service.

■ In *Robinson* the Supreme Court held that a California statute that made the "chronic condition" or "status" of narcotics addiction a criminal offence inflicted a cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. In so ruling the Court emphasized that the statute was not one which punished "antisocial or

disorderly behavior" resulting from the use of narcotics. *Id.* at 666, 82 S.Ct. at 1420. *Robinson* is distinguishable from this case on several grounds. Separation from service is not a criminal penalty and therefore does not implicate the Eighth Amendment. *See Ingraham v. Wright,* 525 F.2d 909 (5th Cir. 1976), *aff'd* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711; *Zwick v. Freeman,* 373 F.2d 110 (2d Cir.1967), *cert. denied,* 389 U.S. 835, 88 S.Ct. 43, 19 L.Ed.2d 96. Moreover, the Navy considered evidence that Selland stated that he was in a relationship and did not need to rely solely on his statement that he was homosexual to reach its conclusion that he had a "propensity" to commit homosexual acts. *See* Transcript of the Board of Inquiry Investigation at 39–40, 42, 125.

The initiation of separation proceedings was not an unconstitutional sanction on Selland's status.

### IV. EQUAL PROTECTION

Selland next claims that his separation from the Navy denied him the equal protection of the laws. The Equal Protection Clause of the Fourteenth Amendment directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. It is made binding on the federal government by the Due Process Clause of the Fifth Amendment. *Bolling v. Sharpe,* 347 U.S. 497, 498–99, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). Fifth Amendment equal protection claims are treated precisely the same as equal protection claims under the Fourteenth Amendment. *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228 n. 2, 43 L.Ed.2d 514 (1975).

■ In any equal protection inquiry the level of review adopted is critical. Selland urges this Court to adopt "strict scrutiny," which applies when a law infringes a "fundamental right" or creates a "suspect classification." *See Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). However, there is no infringement of a "fundamental right" in this case, *Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), and homosexuality is not recognized as a suspect clas-

sification, *Cleburne,* 473 U.S. at 441–442, 105 S.Ct. at 3255. *Cf. Rostker v. Goldberg,* 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981). Therefore the Policy will be examined under "rational basis" review.

■ The Supreme Court recently discussed the operation of rational basis review in equal protection analysis in *Heller v. Doe,* — U.S. ——, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). At this level of review classifications are "accorded a strong presumption of validity" and do not violate the Equal Protection clause "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* at ——, 113 S.Ct. at 2642. The government is relieved from the obligation of producing evidence of rationality and the party attacking the law must bear the burden of negating all possible justifications whether or not found in the record. *Id.* at ——, 113 S.Ct. at 2643. Finally, "courts are compelled . . . to accept a legislature's generalizations even when there is an imperfect fit between means and ends." *Id.*

■ Selland contends that the ban on homosexual conduct is not rationally related to the admittedly legitimate purpose of maintaining discipline and fighting ability in the military. He claims that the justifications offered by the government—that the ban promotes unit cohesion, maintains discipline and morale, and prevents sexual tension and unit polarization—are all derived from hatred and prejudice held by heterosexuals towards homosexuals. Selland supports this argument by citing two cases that struck down laws that the Supreme Court determined were based on fear and prejudice. *See Cleburne, supra* (invalidating zoning ordinance requiring special use permits for a group home for the mentally retarded); *Palmore v. Sidoti,* 466 U.S. 429, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984) (invalidating laws removing a child from the mother's custody because of her interracial marriage).

In making this argument Selland is asking this Court to find that the ban on homosexual acts is based solely on hatred and prejudice. It is true that other courts that have faced this issue have been willing to make this inference. *See, e.g., Pruitt v. Cheney,* 963 F.2d 1160 (9th Cir.1991) (a similar policy violated Equal Protection Clause because it was based on social disapproval and government did not establish a rational basis in the record); *Cammermeyer v. Aspin,* 850 F.Supp. 910 (W.D.Wa.1994) (a similar policy violated Equal Protection Clause because it was based on the prejudice of soldiers, not the unfitness of gays to serve). However, this Court is not satisfied that Selland has met his burden of proof in attacking the rationality of a law. As the *Heller* court made clear, Selland must negate all possible justifications whether or not they are contained in the record.

Deference towards Congressional and Presidential judgment in the military context, previously discussed in part II of this opinion, counsels that courts should proceed with caution even in an equal protection claim. This approach was followed by the Supreme Court when it upheld Congress' decision to require only men and not women to register for the peacetime draft against an equal protection challenge. *Rostker v. Goldberg,* 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981) (applying intermediate scrutiny). The military must continually prepare for combat at any time and lapses in discipline and order can jeopardize the security of the nation and the safety of members of the armed forces. These parameters must be considered when making rational decisions about what is necessary to maintain the effectiveness of fighting units.

Since Selland challenges the Policy as applied to him, the equal protection analysis is limited to the facts of this case. Selland's admission occurred in the confines of a nuclear attack submarine, where the crew has little or no privacy and is isolated from the outside world for prolonged periods of time. Indeed, at the time of his admission the ship was preparing for an unsupported top secret mission. Transcript of the Board of Inquiry Investigation at 48. In such a context, this Court cannot determine that the decision to separate Selland because of possible disruption among the crew was irrational. The rationality of separating a member from service would be more dubious if the statement occurred on a base on the mainland or in

units not facing imminent combat situations, but that is not the factual situation before this Court.

Accordingly, the application of the Policy to Selland did not violate the Equal Protection clause.

## V. OTHER CLAIMS

Selland raises several other challenges to the Policy. First, he claims that the Board of Inquiry did not afford him Due Process of law as required by the Fifth Amendment of the Constitution because of the statements of Captain Feltes in the voir dire examination. The Due Process Clause has been interpreted to guarantee the "right to a fair trial in a fair tribunal." *Withrow v. Larkin*, 421 U.S. 35, 46–47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975). Although Feltes expressed doubt about whether Selland could be an effective Naval officer, the issue to be decided by the Board was whether Selland had violated the Policy. Given the limited mission of the Board of Inquiry, the evidence before the Board that Selland had stated he was homosexual and in a monogamous relationship, and the failure of Selland to enter evidence showing that he did not have a propensity to commit homosexual acts as required by the Policy, it cannot be said that Feltes' remarks so tainted the tribunal as to result in a Constitutional violation. The record does not show that the Policy was misapplied in this case. Selland's due process argument is another attempt to attack the legal presumption, which this Court has determined is valid.

Selland also claims that the decision to separate him was arbitrary and capricious in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706. An agency acts in an arbitrary and capricious manner if it relies on factors that Congress did not intend it to consider or explains its decision in a manner contrary to evidence before it. *Bedford County Memorial Hospital v. Health and Human Services*, 769 F.2d 1017 (4th Cir.1985). In this case the Navy's decision was based on the application of standards detailed in both the statute and the DoD Directive, a two-day hearing before a Board of inquiry, and consideration of an administrative record that comprises over one thousand pages. It is apparent that the Board deliberated carefully and considered the factors outlined in the Policy. Again, this argument is a futile attempt to contest the Policy itself.

## VI. CONCLUSION

For the foregoing reasons no triable issues of fact remain and the Defendants' Motion for Summary Judgment is granted.

## *ORDER*

In accordance with the attached Memorandum, it is this 31st day of October, 1995, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendants' Motion for Summary Judgment BE, and hereby IS, GRANTED; and

2. That judgment BE, and hereby IS, ENTERED in favor of the Defendants.