## PLANNED PARENTHOOD ASSOCIATION OF SOUTHEASTERN PENNSYLVANIA, INC.

v.

### Howard WALTON, et al.

### Civil Action No. 95–2813.

United States District Court, E.D. Pennsylvania.

Dec. 3, 1996.

---

David E. Loder, Melissa H. Maxman, Philadelphia, PA, for Plaintiff.

James T. Owens, Owens, D'Ambrosio & Nescio, West Chester, PA, for Defendants.

## MEMORANDUM AND ORDER

FULLAM, Senior District Judge.

This case involves a challenge to the Freedom of Access to Clinic Entrances Act (FACE or the Act), 18 U.S.C. § 248. The Act provides for criminal and civil penalties for any person who

> by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services....

18 U.S.C. § 248(a)(1). Defendants are anti-abortion activists who have been sued under the Act by plaintiff Planned Parenthood of Southeastern Pennsylvania. At the request

of this Court, the parties have briefed and argued the issue of whether the statute is unconstitutional on its face: it is defendants' contention that the Act violates the First, Eighth, Tenth, and Fourteenth Amendments and the Religious Freedom Restoration Act of 1993, and that Congress lacked the authority under the Commerce Clause to pass it. The issue is one of first impression in this Circuit.

## I.

■ Defendants make a number of First Amendment challenges to the Act. They first argue that FACE is void for vagueness because it does not give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited," *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972), and will have a chilling effect on peaceful expression in opposition to abortion. In support of their position, defendants note that the terms "force or threat of force," "physical obstruction," "injures," "intimidates," "interferes," and "is or has been or . . . from obtaining or providing" are not defined. Even terms that are defined are vague, say defendants, such as "interfere with" (defined as "to restrict a person's freedom of movement"), "intimidate" (defined as "placing a person on reasonable apprehension of bodily harm to him or herself or to another") and "physical obstruction" (defined as "rendering impassable ingress to or egress from a facility . . . or rendering passage to or from such a facility . . . unreasonably difficult or hazardous"). The Courts of Appeals for the Fourth, Seventh, Eighth and Eleventh Circuits have held that the statute is not unconstitutionally vague, *see United States v. Soderna*, 82 F.3d 1370 (7th Cir.1996); *United States v. Dinwiddie*, 76 F.3d 913 (8th Cir.1996); *Cheffer v. Reno*, 55 F.3d 1517 (11th Cir.1995); *American Life League, Inc. v. Reno*, 47 F.3d 642 (4th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 55, 133 L.Ed.2d 19 (1995), as have numerous district courts.

While I acknowledge that none of these decisions is binding on this Court, I am not persuaded, as defendants urge, that they were incorrectly decided. First, the definitions contained in the statute are sufficiently clear. Congress must be permitted the flexibility to define a prohibited act "with sufficient breadth to make the prohibition effective." *See Soderna*, 82 F.3d at 1377. Second, the undefined terms have passed constitutional muster in other statutory contexts. *See, e.g., Cameron v. Johnson*, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968) (upholding anti-picketing law containing the terms "obstruct," "unreasonably" and "interfere with").

■ Next, defendants claim that the law is overbroad because: (1) it reaches beyond "fighting words" or "imminent threats of lawless action;" (2) because it allows individuals to sue for harm to the speaker, such as a hunger strike; and (3) allows third parties to sue based upon their subjective fear that speech threatens bodily harm to another. Overbreadth doctrine is to be applied sparingly. *See Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916–17, 37 L.Ed.2d 830 (1973). As the Act prohibits only force, the threat of force, and physical obstruction, "it is difficult to see how the Act is substantially overbroad in relation to its legitimate scope of outlawing violence and barriers to access." *American Life League*, 47 F.3d at 653. *See also Dinwiddie*, 76 F.3d at 924 ("FACE prohibits only a limited range of activity. It is not even close to being overbroad."). Moreover, any "third party" who desires to bring an action due to concerns about harm to another must have standing to do so; the Act has not abrogated this requirement. *See* H.R.Rep. No. 306, 103d Cong.2d Sess. 13 (1993), *reprinted in* 1994 U.S.C.C.A.N. 699, 710.

■ Third, defendants contend that FACE impermissibly singles out anti-abortion speech. If this is correct, the statute is subject to strict scrutiny and must be necessary to serve a compelling governmental interest by the least restrictive means. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 395–96, 112 S.Ct. 2538, 2549–50, 120 L.Ed.2d 305 (1992). If, on the other hand, the Act is content and viewpoint neutral, it is subject to intermediate scrutiny, and must be narrowly tailored to serve a substantial interest. *See Ward v. Rock Against Racism*, 491 U.S. 781,

791, 109 S.Ct. 2746, 2753–54, 105 L.Ed.2d 661 (1989). A law is content and viewpoint neutral if it is justified "without reference to the content of the regulated speech." *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 763, 114 S.Ct. 2516, 2523, 129 L.Ed.2d 593 (1994) (quoting *Ward*, 491 U.S. at 791, 109 S.Ct. at 2753–54). The stated purpose of FACE is "to protect and promote public safety and health and activities affecting interstate commerce by establishing Federal criminal penalties and civil remedies for certain violent, threatening, obstructive and destructive conduct that is intended to injure, intimidate or interfere with persons seeking to obtain or provide reproductive health services." Pub.L. No. 103–259, § 2, 108 Stat. 694, 694 (1994). Furthermore, the Act by its terms may not be construed "to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution." 18 U.S.C. § 248(d)(1). Given this, I am confident that Congress' purpose was not to discriminate against a particular idea, but to prohibit particular conduct. The fact that this conduct may be motivated by a particular belief, or is more likely to be engaged in by persons who share a given ideology, does not shield it from regulation. *See American Life League*, 47 F.3d at 649–51; *accord, Soderna*, 82 F.3d at 1375–76; *Dinwiddie*, 76 F.3d at 924. *See also Wisconsin v. Mitchell*, 508 U.S. 476, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993) (upholding statute providing enhanced penalties for selecting battery victim because of the victim's race); *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (upholding law prohibiting the burning of draft cards to protest the Vietnam War).

Having concluded that FACE is content neutral, I must determine (1) whether it furthers an important or substantial government interest; (2) whether that interest in unrelated to the suppression of free speech; and (3) whether the incidental restriction on First Amendment rights is not greater than is essential to the furthering of that interest. *See O'Brien*, 391 U.S. at 377, 88 S.Ct. at 1679. The Supreme Court has stated that the government "has a strong interest in protecting a woman's freedom to seek lawful medical or counseling services in connection with her pregnancy." *Madsen*, 512 U.S. at 767, 114 S.Ct. at 2526. As I have determined that the Act is viewpoint and content neutral, the second prong of the *O'Brien* test is satisfied as well. Finally, the Act is narrowly tailored to further the governmental interest at issue:

> Much of the conduct (force and violence) outlawed under the Act lacks any protected expressive element at all. Of course, peaceful but obstructive protesting, which plaintiffs argue has expressive elements, could run afoul of the Act. For example, protesters blocking a clinic door as they pray might violate the Act's prohibition on physical obstruction. However, such a violation would be simply a consequence of the government's lawful aim to protect access to reproductive health services. After all, the Act leaves open ample alternative means for communication. In a non-violent, non-obstructive manner, protestors may still stand outside reproductive health facilities and express their anti-abortion message. They may still proclaim their views and make their pleas by voice, signs, handbills, symbolic gestures and other expressive means.

*American Life League*, 47 F.3d at 653; *accord, Dinwiddie*, 76 F.3d at 924; *Cheffer*, 55 F.3d at 1521–22.

Defendants also assert, citing *Madsen*, 512 U.S. at 763–64, 114 S.Ct. at 2524, that even if FACE is content and viewpoint neutral, it should be subject to heightened scrutiny because it is not a generally applicable law. Defendants reliance on *Madsen* is misplaced. *Madsen* concerned not a statute, but an injunction against certain activities of particular protestors; in such a situation the greater danger of censorship calls for a greater level of scrutiny.

■ Defendants' final First Amendment challenge to the statute implicates the Free Exercise Clause. Relying on *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (invalidating ordinance which outlawed animal sacrifice but not, e.g., hunting or fishing), defendants assert that "by definition

opposing abortion is a form of religious exercise," and that "in the vast majority of cases, only those expressing their religious beliefs or ·convictions will be effected [sic] by FACE." The Act, however, "punishes conduct for the harm it causes, not because the conduct is religiously motivated." *American Life League,* 47 F.3d at 654.

## II.

Defendants next challenge the validity of FACE on Eighth Amendment grounds. The Act provides:

> **(b) Penalties.**—Whoever violates this section shall—
>
>> (1) in the case of a first offense, be fined in accordance with this title, or imprisoned not more than one year, or both; and
>>
>> (2) in the case of a second or subsequent offense after a prior conviction under this section, be fined in accordance with this title, or imprisoned not more than 3 years, or both;
>
> except that for an offense involving exclusively a nonviolent physical obstruction, the fine shall be not more than $10,000 and the length of imprisonment shall be not more than six months, or both, for the first offense; and the fine shall, notwithstanding section 3571, be not more than $25,000 and the length of imprisonment shall be not more than 18 months, or both, for a subsequent offense; and except that if bodily injury results, the length of imprisonment shall be not more than 10 years, and if death results, it shall be for any term of years or for life.

18 U.S.C. § 248(b). The statute also provides for a private right of action and the following relief:

> [T]he court may award appropriate relief, including temporary, preliminary, or permanent injunctive relief and compensatory and punitive damages, as well as the costs of suit and reasonable fees for attorneys and expert witnesses. With respect to compensatory damages, the plaintiff may elect, at any time prior to the rendering of final judgment, to recover, in lieu of actual damages, an award of statutory damages in the amount of $5,000 per violation.

18 U.S.C. § 248(c)(1)(B). Civil actions may also be brought by the U.S. Attorney General and by state Attorneys General.

■ Defendants assert that the prison terms are cruel and unusual in that they are disproportionate to the offense of "peaceful expression in opposition to abortion." It bears repeating that what the statute proscribes is force, the threat of force, and physical obstruction, not "peaceful expression." As for the fines, they are not excessive; they are capped by the statute and judges are given discretion to set them within those caps. In any event, it is likely that defendants' attack on the criminal penalties is not ripe for disposition, because this action does not involve a criminal prosecution. *Cf. Cheffer,* 55 F.3d at 1523–24 (Eighth Amendment claim not ripe until impending imposition of punishment or fine).

■ Defendants also express similar concerns about the civil sanction provisions (for actions brought by the U.S. or states' Attorneys General) and civil damage provisions (for actions brought by private parties). Again, defendants are not being sued by an Attorney General, so their claims along these lines are unripe. As for the civil damage provisions—for which these defendants may potentially be found liable—the Excessive Fines Clause "does not constrain an award of money damages in a civil suit when the government neither has prosecuted the action nor has any right to receive a share of the damages awarded," and thus is inapplicable. *See Browning–Ferris Indus. v. Kelco Disposal, Inc.,* 492 U.S. 257, 264, 109 S.Ct. 2909, 2914–15, 106 L.Ed.2d 219 (1989).

## III.

■ One of the stated sources of authority for the enactment of FACE is the Fourteenth Amendment. Relying on the *Civil Rights Cases,* 109 U.S. 3, 11, 3 S.Ct. 18, 21–22, 27 L.Ed. 835 (1883), defendants contend that the Fourteenth Amendment "does not authorize Congress to create a code of municipal law for the regulation of private rights," and by exceeding its authority thereunder, Congress has usurped powers reserved to the states by the Tenth Amend-

ment. However, section 5 of the Fourteenth Amendment authorizes Congress to pass laws to enforce the other provisions of that amendment. This includes the civil rights of women who seek to obtain reproductive health services. It goes without saying that if the statute passes muster under the Fourteenth Amendment (or is an otherwise valid exercise of Congressional authority), then it does not violate the Tenth Amendment.

## IV.

■ Defendants also argue that FACE is an unconstitutional exercise of Congress' commerce power. In *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Supreme Court held that the Gun–Free School Zones Act, which made it a federal crime knowingly to possess a firearm within a school zone, exceeded Congress' authority under the Commerce Clause. *Id.* at ——, 115 S.Ct. at 1626. The Court identified three categories within which Congress may regulate under the Commerce Clause:

> First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce.

*Id.* at ——, 115 S.Ct. at 1629–30 (citations omitted). The Court went on to find that the Gun–Free School Zones Act was

> a criminal statute that by its terms has nothing to do with "commerce" or any sort of economic enterprise, however broadly one might define those terms. [It] is not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated. It cannot, therefore be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce.

Second, [it] contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce....

*Id.* at ——, 115 S.Ct. at 1630–31. Recently, the Third Circuit distinguished *Lopez* in *United States v. Orozco*, 98 F.3d 105 (3d Cir.1996). The panel held that Congress did *not* exceed its Commerce Clause power when it enacted the Drug–Free School Zones Act (enhancing penalties for manufacturing, distributing or possessing with intent to distribute a controlled substance within one thousand feet of a school), because the sale of drugs "substantially affects interstate commerce," and because the Act "directly regulates commerce in illegal drugs." *Id* at 107.

Defendants believe their intrastate protest activities do not have a substantial effect on interstate commerce, and therefore that the Act does not pass muster under *Lopez.* Every post–*Lopez* appellate decision that has considered the Commerce Clause issue has rejected this position. First, clinic patients and staff frequently travel interstate to obtain or provide reproductive health services. *See Dinwiddie*, 76 F.3d at 919–20. And unlike the Gun–Free School Zones Act, FACE directly regulates a commercial activity—the provision of reproductive health care services—by protecting it from disruption. *See United States v. Wilson*, 73 F.3d 675, 683–84 (7th Cir.1995); *Cheffer*, 55 F.3d at 1520–21.

Accepting defendants' interpretation of *Lopez* effectively returns Commerce Clause jurisprudence to the days of *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935) (striking down federal wage and hour regulations), thereby invalidating not only the statute at issue here, but also thirty years of civil rights legislation. *See, e.g., Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964), and *Katzenbach v. McClung*, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964) (upholding Title II of the Civil Rights Act of 1964). I am confident that this is not what the Supreme Court intended.

## V.

 Defendants' last argument concerns the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.,* which provides:

> Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb–1(b). Defendants claim that FACE burdens their "religious mission of helping abortion bound women." Defendants do not, of course, claim that their religious beliefs advocate the use of force or threat of force or the physical obstruction of clinic entrances. These are the only activities which the Act proscribes. Any incidental burden on the exercise of religion is adequately justified by the government's compelling interest in regulating this unprotected conduct.

## VI.

As a final matter, I recognize that most of defendants' claims find support in *Hoffman v. Hunt,* 923 F.Supp. 791 (W.D.N.C.1996), *order stayed pending appeal,* No. 96–1581(L) (4th Cir. May 31, 1996). Alone among those courts that have considered the issue, the *Hoffman* court held the Act to be unconstitutional on its face. I decline to follow its lead.

For the foregoing reasons, I hold that the Freedom of Access to Clinic Entrances Act is not unconstitutional on its face, and defendants' fifth, sixth, eighth, tenth, and eleventh affirmative defenses will therefore be stricken.