[Cite as *State v. Locke*, 2021-Ohio-4609.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 110511 |
| v. | : | |
| NATALIE LOCKE, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 30, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-653534-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Yasmine M. Hasan, Assistant Prosecuting Attorney, *for appellee.*

Jeffrey S. Richardson, *for appellant.*

SEAN C. GALLAGHER, J.:

{¶ 1} Natalie Locke appeals the denial of a postsentence motion to withdraw a guilty plea filed under Crim.R. 32.1. Locke has not demonstrated the

existence of a manifest miscarriage of justice, and thus, we affirm the decision of the trial court.

{¶ 2} On the evening of the debate between the then-candidates for President of the United States in September 2020, Locke participated in a protest near the debate area. Locke was detained by police officers for a reason that has not been explained by the record or the parties. App.R. 16(A)(6). During this detention, Locke "kneed" Sergeant Sean Dial after he asked her to sit down. Locke was arrested and charged with a violation of R.C. 2903.13(A) for attempting to or actually inflicting physical harm upon a law enforcement officer, a fourth-degree felony offense and an enumerated "offense of violence" under R.C. 2901.01(A)(9).[1] Locke was one of only two arrests made on the evening of the presidential debate.

{¶ 3} During the pretrial proceedings, Locke's attorney of record negotiated a plea arrangement with the state. Approximately one month before the scheduled trial date, at the final pretrial conference, Locke agreed to plead guilty to obstruction

---

[1] Offenders convicted of a felony offense of violence are not eligible to seek the sealing of the record of conviction. *State v. V.M.D.*, 148 Ohio St.3d 450, 2016-Ohio-8090, 71 N.E.3d 274, ¶ 16. An unlisted offense qualifies as an "offense of violence" under R.C. 2901.01(A)(9)(c), if the defendant either pleads guilty to, or admits to facts establishing, an offense that contains an element of having caused physical harm or a risk of serious physical harm. *State v. Gurley*, 8th Dist. Cuyahoga No. 104981, 2018-Ohio-381, ¶ 11, quoting *State v. Cargill*, 2013-Ohio-2689, 991 N.E.2d 1217, ¶ 20 (8th Dist.). In order for an unlisted offense to be considered an "offense of violence," therefore, the offender must be convicted of an offense that involved "physical harm to persons or a risk of serious physical harm to persons." *State v. Freeman*, 8th Dist. Cuyahoga No. 103677, 2016-Ohio-3178, ¶ 15. R.C. 2921.31(B) elevates the obstruction offense to a fifth-degree felony if the purposeful obstruction created a risk of physical harm to any person. The distinction between creating a risk of physical harm and actually inflicting physical harm may provide an avenue of future relief foreclosed by law had Locke been convicted of the assault offense as charged.

of official business under R.C. 2921.31, a felony of the fifth degree because Locke agreed that her violation created "a risk of physical harm to any person." There is no dispute that the trial court conducted a thorough and complete plea colloquy under Crim.R. 11, which included, in pertinent part, Locke advising the court that she was satisfied with her attorney's representation during the pretrial proceedings.

{¶ 4} During the sentencing hearing, postponed to permit the victim's attendance, Sgt. Dial stated that he did not provoke or otherwise instigate Locke's attempt to hurt him. In fact, nothing in the record indicates that any force, much less unreasonable or excessive force, was used to detain Locke. For her part, at the time of sentencing Locke accepted responsibility for her conduct and apologized to Sgt. Dial for not "paying [him] the respect [he] deserve[s], not only as a police officer, but as a human being." After considering the statements and the record, the trial court sentenced Locke to serve a one-year term of community control sanctions that included ten days of jail that were served in Cuyahoga County Jail over the course of five subsequent weekends, fines, and court costs. Locke did not directly appeal her conviction.

{¶ 5} One month after being sentenced, Locke retained new counsel who filed a motion to withdraw her guilty plea. In her motion, Locke claimed her previous attorney failed to adequately represent her and explain the ramifications of her pleading guilty to a fifth-degree felony offense. "Without divulging specific facts related to the incident," Locke claimed that her attorney failed to explain the existence of certain challenges to her initial detention, failed to disclose that her case

implicates rights guaranteed under the First Amendment, and that her defense counsel failed to "defend the charge on the elements of the offense itself." Further, Locke had become concerned about the impact the felony conviction will have on her future; she claimed in her appellate briefing that a college scholarship she received from The School of Art Institute of Chicago, beginning in the fall term of 2020, had been retracted as a result of the conviction. That claim is not supported by any verified statement or other evidence presented to the trial court and, in fact, is contradicted by the sentencing transcript in which it was disclosed that she declined to attend the institution due to financial reasons.

{¶ 6} In support of her motion, Locke attached two affidavits executed by her and her mother, although we note that a "self-serving affidavit by the moving party is generally insufficient to demonstrate manifest injustice." *Richmond Hts. v. McEllen*, 8th Dist. Cuyahoga No. 99281, 2013-Ohio-3151, ¶ 14, citing *State v. Simmons*, 8th Dist. Cuyahoga No. 91062, 2009-Ohio-2028, ¶ 30. Nonetheless, according to Locke, she met with her previous defense counsel on two occasions but only at the courthouse during scheduled pretrial conferences. Locke and her mother additionally claimed that Locke's defense counsel failed to provide access to the body-camera footage that recorded her interaction with Sgt. Dial and that the only account of her arrest came from the Fox8.com reporting of the matter. The trial court denied the motion without a hearing, and this timely appeal ensued.

{¶ 7} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence

may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1. "Manifest injustice" is defined as a "'fundamental flaw in the path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her.'" *State v Cottrell*, 8th Dist. Cuyahoga No. 95053, 2010-Ohio-5254, ¶ 15, quoting *State v. Sneed*, 8th Dist. Cuyahoga No. 80902, 2002-Ohio-6502. "It has also been defined as 'a clear or openly unjust act,' which exists only in extraordinary cases." *Id.* at 15, citing *State v. Owens*, 8th Dist. Cuyahoga No. 94152, 2010-Ohio-3881, citing *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998); *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977).

{¶ 8} Appellate review of the denial of a postsentence motion to withdraw a guilty plea occurs under the abuse-of-discretion standard of review. *State v. Straley,* 159 Ohio St.3d 82, 2019-Ohio-5206, 147 N.E.3d 623, ¶ 15, citing *State v. Smith,* 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph two of the syllabus, and *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶ 32. "A trial court is not required to hold a hearing on every postsentence motion to withdraw a guilty plea"; a hearing is only required "if the facts alleged by the defendant, accepted as true, would require that the defendant be allowed to withdraw the plea." *State v. D-Bey*, 8th Dist. Cuyahoga No. 109000, 2021-Ohio-60, ¶ 57, citing *State v. Norman*, 8th Dist. Cuyahoga No. 105218, 2018-Ohio-2929, ¶ 16, and *State v. Vihtelic*, 8th Dist. Cuyahoga No. 105381, 2017-Ohio-5818, ¶ 11.

**{¶ 9}** Locke maintains that her guilty plea should be cast aside because it was obtained based on defense counsel's failure to provide competent legal advice. According to Locke, had she known of the consequences of a felony conviction and the availability of defenses based on the First Amendment of the federal Constitution, she would have challenged the assault charge on its merits rather than pleading guilty to the reduced charge. Locke presents the divided panel decision in *State v. Davner*, 2017-Ohio-8862, 100 N.E.3d 1247, ¶ 1 (8th Dist.), as being directly on point and in support of her claims.

**{¶ 10}** In *Davner*, the defendant appeared for trial on charges of rape, but his counsel of record indicated that he was unprepared to proceed because he assumed that the defendant would accept a plea offer first presented on the morning of trial. *Id.* at ¶ 15. Davner's attorney was paid $20,000 for the pretrial proceedings and was to receive $1,000 a day should the matter proceed to trial. *Id.* at ¶ 6. The rape charges were based on DNA evidence after Davner initially claimed he did not have sexual contact with the victim. After the DNA evidence was disclosed, Davner claimed the sexual conduct was consensual. During the pretrial proceedings, Davner's attorney "never responded to the state's discovery request, never filed any motions, never interviewed any witnesses and never hired an investigator." *Id.* at ¶ 8. Davner claimed "that he repeatedly told [his attorney] that he was innocent and that he wanted to go to trial and did not want to plea." *Id.* at ¶ 7. On the morning of the scheduled trial date, the state tendered its first plea offer. *Id.* at ¶ 15. There was

a limited time frame to accept that offer because the trial was set to proceed within hours. *Id.* The *Davner* majority concluded after

> considering the unique facts and totality of the circumstances in this case, including: the limited time frame in which Davner was given to consider the state's plea offers; the incomplete information Davner received from counsel regarding judicial release; Davner's demonstrated lack of a full and complete understanding, prior to the plea hearing, of the offenses to which he would be pleading guilty and the consequences of his guilty pleas; the limited information Davner received regarding the nature of the offenses and the effect of his guilty pleas at the plea hearing; counsel's admission that he was not prepared to try the case if Davner rejected the state's plea offers and Davner's testimony that, but for this confluence of events, he would not have entered his guilty pleas,

that it was necessary to withdraw the defendant's plea to avoid a manifest miscarriage of justice. *Id.* at ¶ 59. Upon remand in Cuyahoga County C.P. No. CR-15-602142 (Oct. 15, 2018), Davner pleaded guilty to the same statutory violations as *Davner* had vacated, although the trial court imposed a shorter aggregate term of imprisonment because the felonious assault count was deleted. The outcome of *Davner* is fact-dependent and not applicable to the limited arguments advanced in this case.

{¶ 11} In this case, the allegations are straightforward and unchallenged. There is no dispute that Locke understood the nature of the charges before considering the plea offer from the state. Locke stood accused of physically assaulting a police officer, and that interaction was memorialized on police body-camera footage — Locke concedes she was aware of the body-camera video evidence in one form or another. Locke made the following statements in her affidavit

attached to her motion to withdraw the guilty plea in support of her claim that her

attorney failed to provide her any legal advice throughout the proceedings:

> 9. That [defense counsel] never explained that he could file motions to challenge my arrest.

> 10. That [defense counsel] never discussed whether my First Amendment rights could play any role in my defense.

> 11. That [defense counsel] never discussed any strategy or defense I could raise at trial.

> 12. That [defense counsel] never asked me about my career aspirations or other consequences of having a felony on my record.

Locke's concerns with what her trial counsel did not explain are misplaced, even if

accepted as true.

{¶ 12} No one has a First Amendment right to physically assault another,

especially a law enforcement officer acting according to their official responsibilities.

*Wisconsin v. Mitchell*, 508 U.S. 476, 484, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993) ("A

physical assault is not * * * expressive conduct protected by the First Amendment"),

citing *Roberts v. United States Jaycees*, 468 U.S. 609, 628, 104 S.Ct. 3244, 82

L.Ed.2d 462 (1984) ("Violence or other types of potentially expressive activities that

produce special harms distinct from their communicative impact * * * are entitled

to no constitutional protection"), and *NAACP v. Claiborne Hardware Co.*, 458 U.S.

886, 916, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982) ("The First Amendment does not

protect violence"). Further, as it pertains to law enforcement officers, under well-

settled Ohio law, "'[i]n the absence of excessive or unnecessary force by an arresting

officer, a private citizen may not use force to resist arrest by one he knows, or has

good reason to believe, is an authorized police officer engaged in the performance of his duties, *whether or not the arrest is illegal under the circumstances.*" (Emphasis added.) *State v. Mann*, 19 Ohio St.3d 34, 39, 482 N.E.2d 592 (1985), quoting *Columbus v. Fraley*, 41 Ohio St.2d 173, 324 N.E.2d 735 (1975), paragraph three of the syllabus.

{¶ 13} Although we emphasize that there are no arguments, much less any supporting evidence, that police officers illegally detained Locke before her assault, even if we took the extraordinary step of presuming the invalidity of the initial detention against which Locke claims she could defend on the merits, the outcome would be the same.

{¶ 14} Irrespective of the circumstances leading to her initial detention and arrest, her unprovoked use of physical force in response to a benign request is not justified, nor would it be excused under First Amendment jurisprudence. More to the point, even if Locke could legally challenge the initial detention, the legality of her initial detention would not have justified her unprovoked conduct in attempting to strike or actually striking a police officer, which in and of itself justified her arrest. From all accounts, Locke resorted to physical force against an officer who had asked her to sit down after she was detained for a reason Locke has failed to disclose — Locke's appellate briefing, in fact, refuses to divulge the underlying conduct that led to her initial detention, and that information is not part of the appellate record since the detention itself was not an issue during the change-of-plea colloquy or the sentencing hearing. App.R. 16(A)(7). Regardless of the nature of the initial

detention, the First Amendment does not preserve an offender's right to physically assault a law enforcement officer. Even if we were to presume that Locke's trial counsel failed to explain the well-settled law precluding her from asserting her First Amendment right or the privilege to resist against excessive force, that failure could not support the claimed existence of a manifest miscarriage of justice in support of the belated motion to withdraw the guilty plea.

{¶ 15} And finally, as it relates to defenses to the assault charge on the merits, unlike other situations in which a law enforcement officer gets punched, kicked, kneed, or otherwise assaulted during a struggle to detain a defendant, potentially impacting the state's burden to prove the offender acted knowingly or purposefully, there is no evidence or even an argument based on Locke's verified statements, demonstrating that Locke's unprovoked assault on Sgt. Dial occurred during a struggle to detain Locke. S*ee State v. Lucas*, 11th Dist. Lake No. 2020-L-118, 2021-Ohio-2721, and *State v. Fips*, 8th Dist. Cuyahoga No. 105825, 2018-Ohio-2296, *rev'd on other grounds,* 160 Ohio St.3d 348, 2020-Ohio-1449, 157 N.E.3d 680 (both cases hinging on whether the defendant acted purposefully in striking the officer attempting to detain the defendant); *but see State v. Brown*, 6th Dist. Lucas No. L-18-1140, 2020-Ohio-1650, ¶ 31 (the jury was entitled to weigh the defendant's credibility in determining whether he intentionally struck the police officer for the purposes of an assault charge); *In re M.H.*, 2021-Ohio-1041, 169 N.E.3d 971, ¶ 47 (1st Dist.) (sufficient evidence of assault committed against law enforcement officer from the defendant's conduct in kicking at the officer); *In re A.F.*, 1st Dist. Hamilton

Nos. C-190680 and C-190721, 2020-Ohio-5420, ¶ 19 (intentionally stomping on an officer's foot constituted assault on a law enforcement officer); *State v. Melton*, 8th Dist. Cuyahoga No. 97245, 2012-Ohio-2386, ¶ 19 (assault of a law enforcement officer affirmed in light of the video evidence of the interaction). In fact, the record itself contradicts such a notion. Sgt. Dial told the court at sentencing that the assault was unprovoked. Since Locke has not presented any factual issues with respect to the record, we must conclude that the particular facts of her case do not lend themselves to the defenses in other cases in which there were issues militating against the required mens rea for assault.

{¶ 16} From the limited record presented, Locke's unprovoked aggression was the result of being told to sit down and, therefore, cannot be considered the product of a struggle in which it could be claimed that the strike was "accidental." Locke's unspecified claim to having defenses to the merits of the assault charge and arrest are without merit. Locke has not identified any defenses to the underlying assault charge or strategies for trial that would have been available in support of her claim that but for the failure of her trial counsel to explain those factually inapplicable defenses, she would not have pleaded guilty to the felony charge.

{¶ 17} Based on the particular facts of this case, we cannot conclude that the trial court abused its discretion in denying Locke's postsentence motion to withdraw her guilty plea. Even accepting the factual basis of the self-serving affidavits as true, Locke has not demonstrated the existence of a manifest miscarriage of justice sufficient to warrant the reopening of her case. Accordingly, Locke has not

demonstrated the facts that would have required the trial court to conduct a hearing on the motion, much less to grant the motion on its merits. We affirm.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, A.J., and
MICHELLE J. SHEEHAN, J., CONCUR